DAVIDSON et al. v. WELLS, County Judge, et al. (No. 8566.)

(Court of Civil Appeals of Texas. Dallas. June 18, 1921.)

1. Highways ⏂103—County commissioners have broad discretion as to where macadamized roads shall be laid out and built.

Under Sp. Acts 36th Leg. (1919) c. 67, as to constructing and maintaining macadamized roads in Rockwall county, the county commissioners have broad discretion as to where the roads shall be laid out and built, and the execution of the plans determined on by them can be interfered with by injunction only in case of abuse of discretion, which is not shown by acts disclosing merely bad judgment, or that the building of a particular road is being given preference over others of equal or greater importance, but facts would have to be established either positively proving the proposed action to be fraudulent or having the necessary effect of showing it to be fraudulent.

2. Highways ⏂103—Law construed not to require completion of one macadamized road to county line before commencing others.

Under Sp. Acts 36th Leg. (1919) c. 67, as to constructing and maintaining macadamized roads in Rockwall county, the commissioners' court held not required to complete the road No. 1, mentioned in the act, east to the line between Rockwall county and Hunt county before any other road is commenced.

3. Injunction ⏂135—Granting or refusing is discretionary.

Granting or refusing or dissolving a temporary injunction is within the sound discretion of a district court, and unless it clearly appears that such discretion has been abused the court's action is not to be reviewed on appeal.

Appeal from District Court, Rockwall County; Joel R. Bond, Judge.

Suit by W. E. Davidson and others against J. R. Wells, County Judge, and others. From judgment for defendants, plaintiffs appeal. Affirmed.

H. L. Carpenter, of Greenville, for appellants.

H. M. Wade, of Rockwall, and T. B. Ridgell, of Breckenridge, for appellees.

HAMILTON, J. This suit was filed by appellants, seeking to enjoin the commissioners' court of Rockwall county and the advisors of said court from diverting certain road funds.

It was alleged by appellants that, at an election properly held under the provisions of the general law of Texas, Rockwall county voted·to issue its bonds for $800,000, for the purpose of preparing, maintaining, and operating macadamized roads in said county; that the bonds were sold, and that the proceeds were in the county treasury.

It was alleged that the ,provisions of a special act of the Thirty-Sixth Legislature (Acts 36th Leg. c. 67), which became operative March 15, 1919, directed how these funds should be spent, and that it required a road designated as highway No. 1 to commence at the line between Dallas county and Rockwall county and extend east through the towns of Rockwall, Fate, and Royse, to the county line, and also required that it should be built before the construction of any other road provided for in the act was undertaken.

And it was alleged that the commissioners' court and its advisors, the latter selected and acting under authority of the special road law, had surveyed and located said highway No. 1, commencing at a point in the Dallas county line, extending east through the towns of Rockwall and Fate, and into the town of Royse, near the business center of which it ended; and that they had made surveys and plans of highway No. 3, and were proceeding to build this road, commencing at a point on the Collin county line near the city water reservoir at Royse, extending thence south through the town of Royse, and intersecting highway No. 1 in Royse; that this was being done without first having constructed highway No. 1 from its terminus in Royse east to the county line; and it was alleged that, if the defendants were permitted to carry out their design and intention, the funds arising from the bond sale would "be exhausted without the completion of said highway No. 1 to the east line of the county, and its construction will never be completed."

The acts of appellees were alleged to amount to an unlawful diversion of public funds of the county from the purposes designated by law for their use. A temporary injunction was granted, and thereafter, upon appellees' motion, it was dissolved, and the act of the court dissolving it has resulted in this appeal.

[1] In the absence of some mandatory provision of the special act specifically requiring the building of the roads in conformity with particular lines, the commissioners' court would have broad discretion as to where the roads should be laid out and built. Only in case of abuse of such discretion could the execution of the plans determined upon by that body be interfered with by injunction. And under the authorities abuse of its discretion could not be declared because of acts merely disclosing bad judgment or acts merely showing that the building of a particular road was being given preference over others of equal or greater importance. Facts would have to be established either positively proving the proposed action to be fraudulent, or having the necessary effect of showing it to be fraudulent. Grayson County v. Harrell, 202 S. W. 160.

[2] But appellants say, in substance, that the special law mandatorily requires the construction of road No. 1 before work is to be

begun on any other road for the building of which the law provides. This, they say, deprives the commissioners' court of any discretion. They contend not only that the legislative fiat expressed in the enactment requires the construction of road No. 1 before beginning any other, but also requires that it extend east to the line between Rockwall county and Hunt county, subject only to the limitation in the special law that such construction be not in conflict with the provisions of some requirement made by the state or federal government. We do not think that from a consideration of the different sections of the law together there can be derived the construction that road No. 1 must be constructed east to a point in the Hunt county line, and that it must be completed before any other road is commenced.

Section 7 of the law seems to recognize the right and duty of the commissioners' court to exercise discretion in selecting the 'route and course of all the roads. That section is as follows:

"In the construction of the permanent roads and highways with the proceeds of the bonds voted as aforesaid, the commissioners' court shall lay out same in the most direct and practicable route, taking into consideration the economy, cost of construction, the people served, looking to and securing the best possible road and results for the cost of construction."

Section 13 is as follows:

"The highway to be constructed under federal and state aid' shall commence at the Dallas county line and pass through the town of Rockwall and across the public square and through the town and streets of Fate and through the city of Royse to the county line unless some provision of the requirement of the federal and state government prohibits."

Section 15 is as follows:

"It is provided that the road from Dallas county line east through the town of Rockwall, Fate and Royse to the county line and known as state highway number one, shall be the first road constructed and shall be of concrete or other hard material in conformity to the requirements of the Highway Department of the state of Texas and Federal Highway Engineer. The second road to be constructed is highway number two and shall run from the courthouse in Rockwall through McLendon and Chisholm to Kaufman county line. The next road to be constructed is highway number three extending from the Collin county line crossing near the city water reservoir of Royse and extending through the town of Royse in a southerly direction and connecting with highway number two at some point near Chisholm or McLendon. The next highway to be constructed is highway number four from a point on highway number one in the town of Rockwall extending in a southerly direction to the town of Heath and on to Kaufman county line. The next highway to be constructed is highway number five leading south or southeast from the town of Fate beginning at highway number one and intersecting highway number three

at some point near or beyond Blackland. The next highway is highway number six leading from the town of Rockwall and from some point on highway number one and extending north or northeast and then east passing near Mt. Zion church and connecting with the highway number one at a point near Old Fate. or some point which will connect the east end of same with highway number one. The next highway to be built is highway number seven which leads in a southeast direction from Royse at a point on highway number one and, if practicable connect with the Hunt county highway or at least give the Royse precinct a highway which shall consist of four and one-half miles of road, the same to be left to the discretion of the commissioners' court. The next highway is highway number eight and shall extend from a point southeast of Rockwall on highway number two in an easterly direction, to connect with highway number three at some point near Blackland, the same to be left to the discretion of the commissioners' court. The next highway is highway number nine and shall extend from a point at Heath or near Heath on highway number four and extend in an easterly or northeasterly direction to connect at some point with highway number two, the same to be left to the discretion of the commissioners' court. The next highway is highway number ten and shall extend, if not otherwise provided for, north out of the town of Rockwall from a point of connection with highway number one to a distance of at least three miles, if possible and practicable to the Collin county line; the commissioners' court to use their discretion. It is compulsory on the commissioners' court to build highway number one, two, three, four and five, but the other highways designated may be changed if the commissioners' court in their judgment deem same proper, right and necessary.

"The commissioners' court may build any other lateral roads out of any funds remaining on hand after above roads have been completed." Gammel's Laws of Tex. vol. 19, p. 210 et seq.

It appears that Rockwall county is bounded on the west by Dallas county, on the north by Collin county and on the east by Hunt county. With reference to the true meridian we are unable to say how much, if any, the line between Collin county and Rockwall county varies from exact east. But assuming this line to be straight, and to run in an easterly and westerly direction (if indeed we must not judicially know these facts), whatever its true direction by the compass, the record discloses that in no event could road No. 1 run true to exact east and follow the specific requirements as to the points through which it is to pass as the following uncontroverted statements of appellants' verified petition disclose, to wit: That the town of Rockwall is three miles south of the Collin county line, which does in fact run in an easterly and westerly direction; that the town of Royse is about one-half mile south of the Collin county line and that the town of Fate is somewhere between Rockwall and Royse. The general course of the road speci-

fied then appears to be north of east. It is also disclosed that the place in Royse, where appellants claim road No. 1 ends, as laid out, is only one and one-half miles from the Hunt county line. These facts show an absence of legislative ascertainment and determination that the road should run exactly east from the Dallas county line to the Hunt county line.

The language of the road law contained in sections 13 and 15 thereof we believe requires the building of the road through Rockwall, Fate, and Royse, and out of Royse to a county line. But we do not find any language in those sections of the law, or in any other section of it, specifically requiring the road to be built out of Royse either directly east or to the Hunt county line.

Furthermore, there is evidence in the record to warrant a finding that the engineers of the state and federal governments had submitted to them alternate routes out of Royse to the county line, and that they approved the road leading from Royse to the Collin county line, in all respects just as the appellees propose to build it, with reference to time of construction, location, and method of building. This action by the state and federal highway engineers reasonably may be said to constitute a prohibition by the state and federal governments of extending the road to the Hunt county line. And, in addition to this, the conclusion is well sustained by the record that the special road law evidences a legislative purpose to extend certain great highways through Rockwall county in effecting a complete state-wide system of roads, and that the only, or, at least, the most practicable way of accomplishing this purpose, in the instance contended over, was to connect with the "Bankhead Highway," a transcontinental road from Washington to Los Angeles, on the south boundary of Rockwall county, very near the western boundary of Hunt county. The proof warrants the further conclusion that, if road No. 1 were built exactly east from Royse to the western line of Hunt county, it would connect with no macadamized road there, but would, it might be said, terminate in a cul de sac.

While section 15 of the special law does provide that road No. 1 shall first be constructed, it also provides that the construction of Nos. 1, 2, 3, 4, and 5 shall be compulsory. This language, we believe, can indicate nothing less than that all these roads are placed by the Legislature upon an equal footing of importance with each other, and we therefore think the power exists in appellees, under the terms of the law, to combine No. 1 with No. 3 for the short distance of one and one-half miles out of Royse to the county line, if the state and federal highway departments, in effect, choose to select such course, as they seem to have done. If the proceeds of the bonds hold out, those living along the short distance of 1½ miles intervening between Royse and the Hunt county line can still be served with a road to Royse connected with Nos. 1 and 3 there at their intersection. For the law amply provides for the construction of subsidiary or lateral roads. If, however, the funds are to be exhausted in building the roads, the building of which is made compulsory, still appellants have no greater equities or higher rights than others who may live in different portions of the county, and this was a matter doubtless considered by the trial judge in connection with the action of the commissioners under the direction of the state and federal highway engineers, assailed by appellants.

[3] We do not think it can be said that the record contains no substantial evidence whatever to support the judgment. Granting or refusing or dissolving a temporary injunction is within the sound discretion of a district court, and, unless it clearly appears that such discretion has been abused, that court's action is not to be reviewed on appeal. Sutherland v. City of Winnsboro, 225 S. W. 63. Since there is evidence to sustain the action of the court, no error or abuse of discretion is disclosed by the record, and the judgment is therefore affirmed.

Affirmed.

---

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes