### LANDWER v. FULLER et al.
#### No. 5671.

Court of Civil Appeals of Texas. Amarillo.
April 16, 1945.

Rehearing Denied May 21, 1945.

Robt. A. Sowder, of Lubbock, for appellant.

Nelson, Brown & McCleskey, of Lubbock, for appellees.

PITTS, Chief Justice.

This is an appeal from a judgment rendered by the trial court refusing injunctive relief to appellant, M. F. Landwer, who owned a tract of land situated near the City of Lubbock in Lubbock County, consisting of about 18 acres located in Yellow House Canyon, bordering along the Double Mountain Fork of the Brazos River, and the same being adjacent to a 12-acre tract of land owned by appellee, Clayson Fuller. Appellant had purchased his land in 1929, since which time he and his family had resided on the same. In 1936 he built a new home and placed other improvements thereon, making it an attractive country home. Early in 1943 appellee purchased the 12-acre tract adjacent to appellant's land for a distance of about 900 feet and immediately north of the same and erected a dairy barn about 1000 feet from appellant's house.

Appellant filed suit against appellee and two other defendants but the record discloses that appellee alone owns, operates, and controls the dairy and owns the land. Appellant alleged that appellee's land had a sharp slope toward his land and that appellee had permitted his premises to become overlaid with manure, feed stalks, and other refuse from his dairy barn and the surrounding grounds, a large part of which washed onto appellant's premises and damaged the same. Appellee answered with a general denial and charged that appellant's damages, if any, were caused by the opening up of a private road and by ditches, levees, and terraces made by appellant on his own land, diverting the water from its natural course onto the most desirable part of his property.

The case was heard by the court without a jury and judgment was rendered for appellee, from which judgment appellant perfected an appeal to this court. We find from the record that a hearing was had before the trial court on July 10, 1944, at a special term of the court, and that on November 24, 1944, at a subsequent term of the court, another hearing was had with an agreement between the parties that all the evidence heard and exhibits offered in evidence at the previous hearing may be considered by the trial court.

At the first hearing the parties to the suit, appellant's wife, several neighbors of the parties, a city milk inspector, and a lay packing house inspector testified and a plat or sketch of the premises of the parties was in evidence and numerous pictures were introduced showing the premises of both parties and drifts of manure, trash, and stalks lodged on the premises of appellant. The record disclosed that appellant had kept several head of cattle on his premises and that he kept in his barnyard and about the premises chickens, turkeys, ducks, guineas, peafowls, and a couple of goats but his cattle had been moved away and his poultry flock had been reduced prior to the first hearing.

At the first hearing the record discloses that appellee had kept from 35 to 85 head of dairy cattle on his premises; that his dairy barn and equipment were regularly inspected by the city milk inspector, who made requirements for better sanitary conditions at various times, all of which requirements were met by appellee; that appellee had fed his cattle south of his barn on a sloping hillside that drained toward appellant's premises; that appellee's cattle bedded at night at the foot of the said sloping hill, some of them within 90 to 100 feet of appellant's house; that manure and other refuse were scattered over a space approximately 400 feet long and 200 feet wide covering a part of the said sloping hill and that manure was sometimes piled on the said space within 150 feet of appellant's premises; that the lay of the land was such that the natural flow of the surface water that fell on appellee's premises was south onto appellant's premises and then on to the Brazos River, which bordered on appellant's south line; that the average rainfall washed much of the manure, trash, stalks from the scattered hay, and other refuse from appellee's premises onto the premises of appellant. The record discloses that prior to the installation of the dairy appellant had opened a road along the north line of his premises and next to appellee's premises to give him

an outlet to the public highway bordering the east line of the premises of both parties; that appellant had dug a ditch on his own premises parallel to the road and had built some levees and terraces to divert the natural flow of a large part of the surface water from the grass land on the east part of his premises to the west part of the same to furnish water for his shrubs and lawn in his yard and for his orchard, which consisted of some 200 fruit trees; that the manure had washed down from appellee's premises and had covered the surface of a large part of appellant's said grass land and was from one inch to six inches deep over the surface of a large part of appellant's orchard and the lawn in the yard about his house; that manure and trash was piled up six to ten inches deep against a chicken wire fence just south of appellant's house and near thereto; that the drainage from washing appellee's barn ran down the south slope of his dairy barnyard and a part of it onto appellant's premises; that some fourteen of appellant's fruit trees had died; that because of existing conditions enumerated above the flies were worse during the season for flies; that the manure and other refuse washed down from appellee's premises and lodged on appellant's premises have made appellant's premises less desirable for residential purposes.

At the hearing held on November 24, 1944 only appellant and appellee testified as to the conditions as they then existed on the premises but numerous additional pictures of the premises of both parties made in the summer and fall of 1944 were introduced showing conditions as they existed during normal weather and as they existed when high water was flowing immediately after big rains. Appellee testified that he had made every change he knew to make since the previous hearing held on July 10, 1944 to give appellant the benefit of the natural flow of the water without the manure and other debris and that former conditions had been corrected; that late in August, or early in September, 1944 he had built a hog wire fence 300 feet long between a large part of his premises and the premises of appellant where the water flowed, using posts placed six or eight feet apart on the ground; that the mesh of the hog wire was three inches to six inches; that the wire was fastened to the posts against the ground and at the top and extended twenty-six inches above the ground; that about November 14, 1944 he had put a rabbit wire with a one-inch mesh and twelve inches high over the hog wire and fastened it to the posts, both on the ground and at the top of the wire; that he had built fences and divided his cattle putting about one-half of them southeast of his barn where the drainage from their location would run east to the public highway and down it to the river without crossing any part of appellant's premises; that he had moved his feeding place for his cattle to a place east and north of his barn where they also bedded down at night; that he did not pile up the manure any more but hauled it in a wheelbarrow 100 yards west of his barn and a part of the way up the hill where he scattered it out so it would all dry in twenty-four to forty-eight hours; that the mesh wire fence had been built since the pictures offered in evidence were taken; that he had made adequate provisions since the hearing held on July 10, 1944 to let the surface water run off his premises onto the premises of appellant without carrying with it any manure, trash or refuse as it had been doing prior to the hearing held on July 10, 1944, but that he was willing to do anything and everything else reasonable about the matter to please appellant.

Appellant testified that the changes made by appellee since the hearing held on July 10, 1944 would not prevent the manure and refuse from continuing to wash from appellee's premises onto his premises; that the manure recently spread on the surface of appellee's land continued to run down onto appellant's premises causing weeds to grow and aggravated his wife's hayfever; that there had been no heavy rain since the previous summer but a recent snow had melted and run a little of the debris from appellee's premises to his premises.

The record reflects that during one of the hearings, the trial court said: "It is the question of whether or not the manure has washed down there and the stalks and filth of any kind that has created a nuisance or rendered the place unfit for habitation or for a residence or lessened its value as a residence * * *."

We think the statement made by the trial court clearly states the issue in the case. However, at the request of appellant for findings of fact and conclusions of law, the trial court made only one finding of fact to the effect that the manner in which appellee operated his dairy did not constitute a nuisance, which finding we believe is not material since appellant was not complaining about the manner in which

appellee was operating his processing plant. Appellant pleaded damages in addition to injunctive relief but he confined his proof to the issue of injunctive relief by reason of damages done to his premises.

A lawful business may be operated in such a way as to become a nuisance. It does become a nuisance if operated in such a manner as to be offensive to the senses of others and to render the enjoyment of life and property uncomfortable, or if its manner of operation works an injury, harm, or prejudice to an individual or to the public. J. A. Burditt and Another v. Svante M. Swenson, 17 Tex. 489, 67 Am.Dec. 665; Trueheart v. Parker, Tex.Civ.App., 257 S.W. 640; 31 Tex.Jur. 433, sec. 21. Whether or not the alleged conditions exist is a question of fact but whether or not the facts found constitute a nuisance is a question of law. Waggoner et al. v. Floral Heights Baptist Church, 116 Tex. 187, 288 S.W. 129; Barstow Town Co. et al. v. Carr et ux., Tex.Civ.App., 234 S.W. 555; 31 Tex.Jur. 455, sec. 40, and authorities there cited. If irreparable injury to real estate or personal property is threatened, irrespective of any legal remedy at law, or, if the nuisance found to exist is of a recurring nature, an injunction to abate same will lie. Article 4642, sec. 4, Revised Civil Statutes; 31 Tex.Jur. 447, sec. 34.

There being no jury in the trial of the instant case, the question of whether or not the alleged facts existed was a question of fact for the trial court. And if such facts were found to exist as alleged, the question of whether or not the same constituted a nuisance was a question of law for the trial court to pass upon.

In the instant case there arises the question of whether or not any nuisance, if any, that may have existed on July 10, 1944, when the first hearing was had, had been voluntarily abated by the changes made by appellee subsequent to the date of the first hearing on July 10, and prior to the date of the second hearing on November 24, 1944, the same being the date of the trial court's judgment. In such cases, if the the defendant intended to remedy the conditions that created the nuisance, if such was found to exist, it was incumbent upon him to prove that conditions had changed but the burden of proof was upon the plaintiff (or the appellant in this case) to prove by a preponderance of the evidence that there had been no remedy

to cure the existing nuisance, if in fact one did exist. In the instant case, the burden of proof was upon appellant to establish by a preponderance of the evidence that appellee's attempts between July 10, 1944 and November 24, 1944 to voluntarily remedy the situation and abate the nuisance, if one existed, was a failure. It is presumed that the trial court found facts in support of the judgment and that it found that if a nuisance did exist at the time of the first hearing it had been voluntarily abated by reason of the changes made by appellee prior to the time of the second hearing or that appellant had failed at the last hearing to discharge the burden of proof showing that such nuisance, if any, had not been voluntarily abated by reason of the changes made by appellee. The issue at the last hearing of whether or not the previous conditions had been remedied and the nuisance, if any, had been abated, was controverted. Appellee testified that an adequate remedy had been found and applied and appellant testified that the purported remedy had failed and the record showed that there had been no big rains to give the matter a thorough test since the changes had been made. There was evidence, therefore, to support a finding of the trial court either for appellant or for appellee. It appears that the trial court found for the appellee on the facts and there being evidence to support the findings of the trial court, this court is bound by the findings that resulted in the judgment of the trial court for appellee, and its judgment is therefore affirmed.

### On Motion for Rehearing

In a motion for rehearing appellant insists that he has established that appellee's manner of operating his dairy barn and surrounding grounds constituted a nuisance and that as a result of such nuisance he had suffered material damage. He further insists that only the court by proper order can abate such a nuisance and that he is "entitled to his injunction as his right existed when he filed the suit, or accrued thereafter."

Appellant likewise complains that the trial court heard and considered improper evidence. There is no showing that the trial court considered any improper evidence or that such evidence was harmful if considered. On the contrary, it is presumed that the trial court did not consider any improper evidence, if such was heard.

674

Appellant is correct in his claim that the record reveals that the river in question crosses a part of appellant's premises but, under the record, we do not consider it material whether the river crosses his premises or borders his premises.

■ Appellant has made no claim on appeal for compensation as damages. He has confined his proof in the trial court and his brief on appeal in this Court to the issue of injunctive relief to prohibit the refuse from running down on his premises from the premises of the appellee. Other complaints and questions raised but not briefed as required by the Rules of Civil Procedure are waived. San Antonio Joint Stock Land Bank v. Malcher, Tex.Civ.App., 164 S.W. 2d 197; Piedmont Fire Ins. Co. v. Ladin, Tex.Civ.App., 174 S.W.2d 991; and Broussard v. L. Cartwright Realty Co., Tex.Civ.App., 179 S.W.2d 777.

■ The following general rule of law is announced in the case of Herman v Forrest, Tex.Civ.App., 294 S.W. 624, 625: "The granting of a writ of injunction is addressed to the sound discretion of the trial court, and his action in refusing to grant such a writ will be revised only where a clear abuse of that discretion is shown. Davidson v. Wells, Tex.Civ.App., 233 S.W. 518; Pavey v. McFarland, Tex. Civ.App., 234 S.W. 591; Fry v. Jackson, Tex.Civ.App., 264 S.W. 612." Such rule is likewise supported by the following cases: Beall v. Barsch, Tex.Civ.App., 37 S.W.2d 761; Miller v. Dickinson, Tex.Civ. App., 236 S.W. 1014; Simon v. Nance, Tex. Civ.App., 142 S.W. 661; and 31 Tex.Jur. 445, sec. 32.

In the instant case the trial court did not file a finding of fact concerning the controlling issue in the case and was not requested by appellant to file additional findings. But the record discloses that the trial court recognized the controlling issue and correctly stated it, as is shown in our opinion.

■ The rule is well settled that an applicant for an injunction must proceed with diligence. 24 Tex.Jur. 133, sec. 93, and authorities there cited. But, for some reason, not disclosed by the record, the first hearing was had by the trial court on the merits of this case on July 10, 1944 and a final hearing was had at a subsequent term of the court four and one-half months later and the judgment was entered at the close of the final hearing. It is admitted by appellant that appellee testified at the final hearing, in effect, that he had made such changes in his premises subsequent to the previous hearing as caused the nuisance, if any, to be abated but that appellant testified that notwithstanding the changes made by appellee the nuisance had not been abated. The trial court heard the controverted issue and found in favor of appellee.

■ The rule is likewise well settled that in a case such as this it will be presumed that the trial court found facts, when such are not reflected by the record, that supported its judgment. If there be evidence of probative force to support the facts in such a case, it is the duty of the reviewing court to affirm the judgment of the trial court if such can be done on any reasonable theory supported by the evidence and authorized by law. Strickland et al. v. Humble Oil & Refining Co. et al., Tex.Civ.App., 181 S.W.2d 901, and authorities there cited.

We have again carefully reviewed the record in this case and have thoroughly considered appellant's motion for rehearing. Under the record and authorities cited, it is our opinion that although much of the evidence is controverted, there is evidence of probative force to support the judgment of the trial court and that it did not abuse its discretion in denying the relief prayed for by appellant. The motion is therefore overruled.