COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-07-080-CV

MCAFEE MX D/B/A MCAFEE MOTO CROSS APPELLANTS

AND MICHAEL MARK MCAFEE

V.

RICHARD FOSTER, 
PHILLIP FITZGERALD, 
 APPELLEES

JAMES AND SHERRI ESTRADA, 

RAY AND GABRIELLE FLETCHER, 

STEVE AND SANDY FAIRFIELD, 

TIM HITCHCOCK, AND HADEN COWDRY

------------

FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellants McAfee MX d/b/a McAfee Moto Cross and Michael Mark McAfee (collectively, “McAfee”) appeal from the trial court’s final judgment and permanent injunction.  We affirm. 

McAfee operated a motocross course on his land near Gainesville, Texas.  The course consisted of two tracks—one for adults and one for children—and ran four days a week from 9 a.m. or noon until dusk.  Richard Foster, Phillip Fitzgerald, James and Sherri Estrada, Ray and Gabrielle Fletcher, Steve and Sandy Fairfield, Tim Hitchcock, and Haden Cowdry (collectively, “appellees”) are McAfee’s neighbors, residing or working within 1100 feet of McAfee’s property.  In 2006, appellees sued to permanently enjoin McAfee from operating the motocross course, claiming it was a nuisance due to the excessive noise and dust it produced, among other problems.  

The trial court initially granted a temporary restraining order and later a temporary injunction.  Following a two-day jury trial, the trial court rendered judgment and issued a permanent injunction in favor of appellees.  McAfee appeals.

In his first and second points, McAfee challenges the legal and factual sufficiency of the evidence to support the jury’s finding that his operation of the motocross track substantially interfered with appellees’ use and enjoyment of their land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities. 

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.
(footnote: 2)  In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable fact-finder could and disregard evidence contrary to the finding unless a reasonable fact-finder could not.
(footnote: 3) 

An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.
(footnote: 4)  We are required to consider all of the evidence  in the case in making this determination, not just the evidence that supports the finding.
(footnote: 5) 

 A nuisance is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities.
(footnote: 6)  Foul odors, dust, noise, and bright lights may constitute a nuisance if sufficiently extreme.
(footnote: 7)  The amount of annoyance or inconvenience that must be produced to constitute a nuisance depends on the varying facts of each case.
(footnote: 8)   

At trial, many of the appellees and two other neighbors who were not parties to the lawsuit testified that McAfee’s motocross tracks substantially interfered with the use and enjoyment of their land.  Fitzgerald described the sound from the tracks as thirty chainsaws in a neighbor’s backyard and stated that it was hard to carry on a conversation outdoors.  Ray Fletcher testified that the constant noise prohibited entertaining and reading outside.  Hitchcock found there was “no way” to play sports outside with his family and that his horse required a tranquilizer in order to be shoed while the tracks were in operation.  Foster also stated that his family could not have an outdoor picnic “because you couldn’t speak to each other” and that his horses would spook on part of his property.  Sherri Estrada claimed that the noise from the tracks prevented her grandchildren from fishing and playing outside.  Sandy Fairfield, who owned a storage business across the street from the tracks, stated that it was difficult to work there because of the constant noise, analogizing the sound to a bunch of jack hammers.
(footnote: 9)  Several witnesses also discussed odor and dust problems.   Further, Mike Fann, an engineer specializing in noise and vibration control, opined that appellees’ complaints were “absolutely reasonable.”  Fann considered a 1977 EPA study that concluded two- and four-stroke engines (the types used on McAfee’s tracks) would harm the community when the noise systemically exceeded fifty-five decibels.  Fann also referred to Texas Penal Code section 42.01, the disorderly conduct statute, which creates a presumption that “a noise is . . . unreasonable if the noise exceeds a decibel level of 85 after the person making the noise receives notice from a magistrate or peace officer that the noise is a public nuisance.”
(footnote: 10)  Fann concluded that twenty or more motorcycles a day on the tracks would exceed the eighty-five decibel benchmark “on a regular basis,” and one of the loudest bikes would surpass eighty-five decibels even at a distance of 1422 feet.
(footnote: 11)  Officer Toby Bean’s testimony that he received a sound reading of ninety-six decibels from the tracks corroborated Fann’s conclusions, and the jury saw a DVD made by appellees showing sound readings in the sixty and seventy decibel range.   McAfee testified that he did not think motorcycles were loud, and another witness denied having any difficulty carrying on a conversation while visiting the tracks.  Further, McAfee presented expert testimony that controverted appellees’ expert to some extent.
(footnote: 12)    

In sum, appellees presented testimony that McAfee’s motocross activities substantially interfered with their use and enjoyment of their land by causing unreasonable discomfort and annoyance to them, and they offered expert testimony supporting this testimony.  Applying the appropriate standards of review, we hold that the evidence was both legally and factually sufficient to support the jury’s nuisance finding.  Accordingly, we overrule McAfee’s first and second points.   

 In his third point, McAfee argues that the trial court erred in granting a permanent injunction because the trial court’s balancing of the equities was not supported by legally or factually sufficient evidence
.   

Abatement of a lawful business is a harsh remedy, and even when the jury finds that a nuisance exists, the trial court should balance the equities in order to determine if an injunction is appropriate.
(footnote: 13)  The trial court should consider injury that may result to the defendant or the public by granting the injunction as well as injury suffered by the plaintiffs if the injunction is denied.
(footnote: 14)  Public convenience or necessity, economic burden to the defendant, and the adequacy of a legal remedy may affect this balance.
(footnote: 15)  An injunction against the nuisance may issue where the injury to the defendant and the public is slight or disproportionate to the injury suffered by the plaintiffs because of the nuisance.
(footnote: 16)  We review the trial court’s decision whether to issue an injunction for an abuse of discretion.
(footnote: 17)
 McAfee claimed that the motocross course was his sole source of income.  He reported a business income loss of $11,847.00 on his 2004 income tax return, however, and declared the property “agricultural.”
(footnote: 18)  Further, in the past McAfee operated a fish business on the property without producing excessive noise.  

The evidence showed that families came to McAfee’s course and enjoyed the motocross sport together.  One witness stated that since McAfee’s tracks had been closed down, he had to drive approximately twenty-eight miles farther each way to get to another motocross course.  The activity at the tracks, however, was so loud that on four days each week appellees effectively could not use the land outside of their homes.  Further, on at least three occasions a CareFlite helicopter landed near the tracks to evacuate an injured rider. 

Considering the competing interests, the trial court could have concluded that a permanent injunction would cause only slight injury to McAfee and the public or that such injury would be disproportionate to appellees’ injuries because of the nuisance.  Applying the appropriate standards of review, we hold that the evidence was legally and factually sufficient to support the trial court’s balancing of the equities and that the trial court did not abuse its discretion in issuing the permanent injunction.
(footnote: 19)  

McAfee further contends under his third point that the permanent injunction is overly broad and the trial court “should have drawn the injunction so as to eliminate the sound that can emanate from [McAfee’s] property, rather than prohibit the activity in its entirety.”  Fann testified, however, that from the distance at which appellees live, even one bike could exceed eighty-five decibels.  Thus, it would be impossible for the trial court to craft an injunction to eliminate the excessive noise without prohibiting the activity.  Further, the injunction only prohibits McAfee from “operating a public or private motorcross [sic] facility” on the property and specifically allows “vehicles operated by immediate family members of [McAfee] who are residents on the real property or those related to [McAfee] by first degree consanguinity or affinity.”  We hold that the restrictions placed on the motocross activity are reasonable, and the permanent injunction is narrowly drawn and precise.
(footnote: 20)  

For all of these reasons, we overrule McAfee’s third point.
(footnote: 21)
 In his fourth and fifth points, McAfee challenges the legal and factual sufficiency of the evidence supporting the permanent injunction, arguing that appellees had an adequate remedy at law and had not suffered an irreparable injury. 

Permanent injunctive relief requires a showing of, among other elements, irreparable injury and the absence of an adequate remedy at law.
(footnote: 22)  “Irreparable injury” occurs when the injury is of such a nature that the injured party cannot be adequately compensated in damages, or the damages cannot be measured by any certain pecuniary standard.
(footnote: 23)  A remedy is “adequate,” for purposes of determining entitlement to an injunction, when it is complete, practical, and efficient to the prompt administration of justice.
(footnote: 24)  The existence of a remedy at law is not ground for denial of injunctive relief unless the legal remedy is as practical and efficient to the ends of justice as the equitable remedy.
(footnote: 25) 

The equitable remedy of injunctive relief is ordinarily available only when the legal remedy of damages will not be adequate.
(footnote: 26)  When a nuisance is of a recurring nature, however, the plaintiffs need not seek damages, and injunctive relief may be appropriate.
(footnote: 27)  At trial, appellees sought only injunctive relief. 

Appellees testified that the excessive noise from the track was a “constant” on the four days each week when the track was in operation.  Further, appellees’ expert Fann testified that (1) no wall or other mechanism could feasibly be installed to reduce the noise levels to an acceptable threshold; (2) there was no way to assign a dollar value to the noise pollution, lack of sleep, and difficulty conversing experienced by appellees; and (3) the only way to discontinue the nuisance was to shut the motocross track down.
(footnote: 28)   McAfee’s expert Ware stated that sound dissipates over distance according to many factors, and McAfee could implement measures to reduce the sound from the tracks. 

   The evidence showed that McAfee’s tracks effectively precluded appellees’ use of their property and shutting down the tracks was the only feasible solution.  The noise from the tracks was recurring, and appellees did not seek money damages at trial.  Further, the trial court would not have abused its discretion in concluding that damages were not “as practical and efficient” as injunctive relief in this case.
(footnote: 29)  Applying the appropriate standards of review, we hold that the evidence was legally and factually sufficient to show that appellees had suffered an irreparable injury and had no adequate remedy at law.
(footnote: 30)  We overrule McAfee’s fourth and fifth points.                

In his sixth point, McAfee claims that the trial court abused its discretion by refusing to submit his proposed jury question regarding the social benefit of the motocross track.
(footnote: 31)  

Although a party to an equitable action has the right to a trial by jury, only ultimate issues of fact are submitted for jury determination.
(footnote: 32)  The jury does not determine the expediency, necessity, or propriety of equitable relief.
(footnote: 33)  The cases that McAfee cites do not support his argument that social benefit is an ultimate issue of fact that must be submitted to the jury.
(footnote: 34)  To the contrary, at least one court of appeals has discussed “social utility” in the context of the trial court’s balancing of the equities.
(footnote: 35)  McAfee has failed to show error
(footnote: 36); therefore, we overrule his sixth point. 

Having overruled all of McAfee’s points, we affirm the trial court’s judgment. 

PER CURIAM

PANEL A:  CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

DELIVERED:  February 7, 2008 
 

FOOTNOTES
1:
See
 Tex. R. App. P.
 47.4.

2:
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998),
 cert. denied
, 526 U.S. 1040 (1999);
 Robert W. Calvert, 
"No Evidence"
 
and "Insufficient Evidence" Points of Error
, 38 T
EX
. L. R
EV
. 361, 362–63 (1960)
.

3:
City of Keller v. Wilson
, 168 S.W.3d 802, 807, 827 (Tex. 2005).

4:
Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965).

5:
Mar. Overseas Corp. v. Ellis
, 971 S.W.2d 402, 406–07 (Tex.), 
cert. denied
, 525 U.S. 1017 (1998).

6:
Schneider Nat’l Carriers, Inc. v. Bates
, 147 S.W.3d 264, 269 (Tex. 2004).

7:
Id.

8:
Gulf Oil Corp. v. Vestal
, 231 S.W.2d 523, 525 (Tex. Civ. App.—Fort Worth 1950), 
aff’d
, 149 Tex. 487, 235 S.W.2d 440 (1951).

9:
McAfee contends that appellees’ subjective testimony was outlandish and exaggerated and that their opinions were not “rationally based” as required by Texas Rule of Evidence 701.   McAfee, however, did not object to the above testimony under Rule 701; thus, he has waived any complaint that the testimony was inadmissible for that reason.  
See
 
Tex. R. App. P.
 33.1(a); 
Bushell v. Dean
, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh’g).  Further, jurors are the sole judge of the credibility of the witnesses and the weight to give their testimony, and we must assume jurors decided all credibility questions in favor of the verdict if reasonable people could do so.  
City of Keller
, 168 S.W.3d at 819.  After reviewing the record, we conclude that a jury could reasonably have found appellees credible.    

10:
See
 Tex. Penal Code Ann.
 § 42.01(a)(5), (c)(2) (Vernon 2003 & Supp. 2007).

11:
The number of motorcycles on the track on any given day varied, but McAfee claimed he did not allow more than forty riders on the track at a time.  Officer Toby Bean recalled seeing twenty or thirty motorcycles at the track when he was there, and one weekend in August 2005 brought a total of 132 motorcycles to the track. 

12:
McAfee’s expert Kevin Ware testified that when measuring sound, a time-weighted average is more accurate than an instantaneous reading because sound levels fluctuate, and noise ordinances are based on time-weighted averages.  Ware surmised that the measurements appellees recorded with their sound meter were instantaneous readings.  

13:
Storey v. Cent. Hide & Rendering Co.
, 148 Tex. 509, 514–15, 226 S.W.2d 615, 618–19 (1950); 
Lee v. Bowles
, 397 S.W.2d 923, 926–27 (Tex. Civ. App.—San Antonio 1965, no writ);
 Fargason v. Econ. Furniture, Inc.
, 356 S.W.2d 212, 215 (Tex. Civ. App.—Austin 1962, writ ref’d n.r.e.).

14:
Storey
, 148 Tex. at 514–15, 226 S.W.2d at 618–19.

15:
See Conner v. Smith
, 433 S.W.2d 911, 914 (Tex. Civ. App.—Corpus Christi 1968, no writ) (adequate remedy at law);
  Schiller v. Raley
, 405 S.W.2d 446, 447 (Tex. Civ. App.—Waco 1966, no writ) (public necessity); 
Hughes v. Jones
, 94 S.W.2d 534, 536–37 (Tex. Civ. App.—Eastland 1936, no writ) (economic harm to defendants). 

16:
Storey
, 148 Tex. at 515, 226 S.W.2d at 619.

17:
See Vaughn v. Drennon
, 202 S.W.3d 308, 313 (Tex. App.—Tyler 2006, no pet.);
 Estancias Dallas Corp. v. Schultz
, 500 S.W.2d 217, 221 (Tex. Civ. App.—Beaumont 1973, writ ref’d n.r.e); 
Fargason
, 356 S.W.2d at 215.

18:
McAfee opened the tracks in January 2004 and started charging riders in March 2004. 

19:
See Estancias
, 500 S.W.2d at 221 (holding that trial court did not abuse its discretion in granting permanent injunction where noise prevented plaintiffs from entertaining in their backyards and carrying on normal conversations in their homes).  

20:
See
 
Schneider
, 147 S.W.3d at 287 (holding that permanent injunctions must be “narrowly drawn and precise”); 
Operation Rescue-Nat’l v. Planned Parenthood of Houston and Se. Tex., Inc.
, 975 S.W.2d 546, 560 (Tex. 1998)  (holding that trial court has “some latitude” in fashioning the details of appropriate injunctive relief); 
Shields v. State
, 27 S.W.3d 267, 271 (Tex. App.—Austin 2000, no pet.) (holding that an injunction should be broad enough to prevent a repetition of the evil sought to be corrected).

21:
McAfee also argues that appellees should not have been granted equitable relief because they lacked clean hands.  James Appleton, an expert in forensic video and audio analysis, testified in a bill of exception at the hearing on McAfee’s motion for new trial that the audio on appellees’ DVD showing their sound readings had been altered.  McAfee, however, does not argue that the trial court improperly denied his motion for new trial.  Thus, we do not address this argument.  
See Pat Baker Co. v. Wilson
, 971 S.W.2d 447, 450 (Tex. 1998) (holding that appellate court cannot reverse a trial court’s judgment on unassigned error).   

22:
Triantaphyllis v. Gamble
, 93 S.W.3d 398, 401 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).

23:
Montfort v. Trek Res., Inc.
, 198 S.W.3d 344, 353 (Tex. App.—Eastland 2006, no pet.); 
Fox v. Tropical Warehouses, Inc.
, 121 S.W.3d 853, 857 (Tex. App.—Fort Worth 2003, no pet.).

24:
Matagorda County Hosp. Dist. v. City of Palacios
, 47 S.W.3d 96, 103 (Tex. App.—Corpus Christi 2001, no pet.).

25:
Khaledi v. H.K. Global Trading, Ltd.
, 126 S.W.3d 273, 284 (Tex. App.—San Antonio 2003, no pet.); 
Irving Bank & Trust Co. v. Second Land Corp
., 544 S.W.2d 684, 688 (Tex. Civ. App.—Dallas 1976, writ ref’d n.r.e.).

26:
Holubec v. Brandenberger
, 58 S.W.3d 201, 210 (Tex. App.—Austin 2001), 
rev’d on other grounds
, 111 S.W.3d 32 (Tex. 2003).

27:
Holubec v. Brandenberger
, 214 S.W.3d 650, 656 (Tex. App.—Austin 2006, no pet.) (holding that injunctive relief was appropriate because nuisance was of a recurring nature); 
Hill v. Villarreal
, 362 S.W.2d 348, 349 (Tex. Civ. App.—Waco 1962, writ ref’d n.r.e.); 
Landwer v. Fuller
, 187 S.W.2d 670, 673 (Tex. Civ. App.—Amarillo 1945, writ ref’d w.o.m.). 

28:
McAfee contends that appellees’ injuries are compensable through damages, citing appellee Richard Foster’s testimony—contained in a bill of exception made during a temporary injunction hearing—that his property declined in value by over $150,000.00 because of the motocross track.  The trial court, however, sustained appellees’ objection to this testimony, and McAfee does not argue that it was improperly excluded.  Therefore, we do not consider this argument.  
See
 
Pat Baker Co.
, 971 S.W.2d at 450; 
Sommers v. Concepcion
, 20 S.W.3d 27, 41 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (holding that a party’s remedy for an adverse ruling is to assign error regarding the adverse ruling). 

29:
Khaledi
, 126 S.W.3d at 284; 
Irving Bank & Trust Co.
, 544 S.W.2d at 688.

30:
Cf. Storey
, 148 Tex. at 512–13, 226 S.W.2d at 617–18 (
holding that plaintiffs had adequate remedy at law where rendering plant’s inconvenience and odors occurred only occasionally, surrounding land had sold for increased value since plant was built, and plant owner was “carrying out the latest and best recognized scientific practices to keep down odors and flies”).

31:
The proposed question stated, “Do you find from a preponderance of the evidence that the operation of the McAfee MX motor [sic] has no beneficial social impact?” 

32:
State v. Tex. Pet Foods, Inc.
, 591 S.W.2d 800, 803 (Tex. 1979); 
Doll v. Hurst
, No. 03-02-00576-CV, 2003 WL 21939711, at *8 (Tex. App.—Austin Aug. 14, 2003, pet. denied) (mem. op.).

33:
Tex. Pet Foods, Inc.
, 591 S.W.2d at 803.

34:
See Elbaor v. Smith
, 845 S.W.2d 240, 243–44 (Tex. 1992) (holding that contributory negligence question should have been submitted to jury); 
Tex. Pet Foods, Inc.
, 591 S.W.2d at 803–05 (holding that the probability of defendant’s continued action, relevant to issuance of permanent injunction, was a question for the trial court rather than the jury); 
Shields
, 27 S.W.3d at 273 (“The principle that the court rather than the jury exercises equitable powers answers [appellant’s] complaint that the court could not include these prohibitions in the order without submitting specific jury questions thereon.”); 
Lehmann v. Wieghat
, 917 S.W.2d 379, 382 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (holding that a controlling issue is one which requires a factual determination to render judgment in the case). 

35:
See Speedman Oil Co. v. Duval County Ranch Co.
, 504 S.W.2d 923, 930–31 (Tex. Civ. App.—San Antonio 1974, writ ref’d n.r.e.).

36:
See Jackson v. U.S. Fid. & Guar. Co.
, 689 S.W.2d 408, 412 (Tex. 1985) (holding that an appellant has the burden to show that the judgment of the trial court was erroneous).