**BROWN FORMAN CORPORATION,**
Appellant,

v.

**Joyce BRUNE, Individually and on Behalf of the Estate of Marie Brinkmeyer, Appellee.**

No. 13–93–415–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 29, 1994.

Rehearing Overruled Feb. 2, 1995.

Mark R. Robeck, Larry F. York, Joe R. Greenhill, Bob E. Shannon, Baker & Botts, Jorge C. Rangel, Rangel & Chriss, Corpus Christi, Professor William Powers, Jr., The University of Texas School of Law, Austin, for appellant.

James B. Ragan, Corpus Christi, Russell H. McMains, Law Offices of Russell H. McMains, Corpus Christi, for appellee.

Before KENNEDY, GILBERTO HINOJOSA and YAÑEZ, JJ.

## OPINION

Justice YAÑEZ, Justice.

This is a products liability and negligence case involving a tequila distiller and a college freshman, an underage drinker, who died from ethanol poisoning after she consumed a large quantity of tequila within a relatively short period of time. At issue is whether the distiller, Brown–Forman, may be liable for damages because it failed to warn of the possibility of death following overconsumption of alcohol within a short amount of time and failed to provide instructions about the safe use of its tequila. The question of whether a distiller had either duty has not been addressed by Texas courts.

We conclude that under the facts of this case, Brown–Forman had no duty to provide a warning of the possibility of death following overconsumption of a large quantity of tequila within a short amount of time and had no duty to provide instructions for the safe use of its tequila. We reverse the trial court's judgment, render judgment in favor of Brown–Forman, and render that Brune take nothing.

On the afternoon of November 14, 1983, eighteen-year-old, college freshman, Marie Brinkmeyer and a friend went to a bar to drink alcoholic beverages. In Texas, in 1983, the legal age for purchasing alcoholic beverages was nineteen.[1] Apparently, the bar personnel did not ask to see her identification and served her alcoholic beverages despite the fact that she was an underage drinker. Testimony from friends accompanying her that afternoon was that she drank a 32–ounce pitcher of hurricanes and an unknown number of white russians. It was at the bar that Marie and a friend planned a tequila party for that evening. Marie and a friend left the

---

1. In 1983, the alcoholic beverage code defined "minor" as a person under the age of 19. In 1985, the code was amended to read that a minor was a person under the age of 21. Tex. Alco.Bev.Code Ann. § 106.01 (Vernon Supp. 1994).

bar late in the afternoon. On the way back to the college campus, Marie and a friend stopped at a liquor store where she illegally purchased a bottle of Pepe Lopez tequila. Brown–Forman manufactures Pepe Lopez tequila. That evening, at the party, she continued the drinking she had begun that afternoon and began drinking tequila without mixing it with any nonalcoholic beverage. Marie drank a glass half filled with only tequila and then straight from the tequila bottle. While at the party, and after drinking heavily and rapidly, Marie became unconscious. Friends took Marie to her room about 10:00 p.m. and laid her on her bed. The next morning, Marie's roommate found her in bed, dead. An autopsy revealed that the cause of her death was related to her ingesting large amounts of ethanol.

Joyce Brune, Marie's mother, sued Brown–Forman claiming that the company was responsible for the wrongful death of her daughter. Brune asserted that the tequila contained a marketing defect in that it was an unreasonably dangerous product in the absence of a warning and/or instructions for appropriate use. Brune asserted this claim as a strict liability action and a negligence action.

We previously addressed these parties after the trial court rendered summary judgment in favor of *Brown–Forman*. *Brune v. Brown–Forman Co.*, 758 S.W.2d 827 (Tex. App.—Corpus Christi 1988, writ denied). In moving for summary judgment, Brown–Forman asserted that under section 402A and the related comments of the Restatement Second of Torts, no liability existed against Brown–Forman for Marie's death.

We reversed the summary judgment noting that the question presented for our review at that time was "whether the risk of death resulting from acute alcohol poisoning is a matter of common knowledge to the community such that there was no duty on the manufacturer to warn of the danger as a matter of law." *Id.* at 828.

In our decision reversing the summary judgment, we addressed the section 402A comments. In order to prevent a product from being unreasonably dangerous, the seller may be required to give directions or a

warning, on the container, as to its use. Second Restatement of Torts § 402A, comment j. But a seller is not required to warn with respect to products, or ingredients in them, which are only dangerous, or potentially so, when consumed in excessive quantity, or over a long period of time, when the danger, or potentiality of danger, is generally known and recognized. Again, the dangers of alcoholic beverages are used as an example. *Id.*

After analyzing the relevant case law and comments to section 402A in the Second Restatement of Torts, we were

> not prepared to hold, as a matter of law, that the general public is aware that the consumption of an excessive amount of alcohol can result in death. We realize that there is no clear line between what is and is not common knowledge, but where facts, as shown by appellant's summary judgment proof, show how easily disputed the knowledge of the fatal propensities of alcohol may be, we will not recognize it as common knowledge as a matter of law. Therefore, based on the record that was before the district court, a trier of fact could properly find that the amount of alcohol consumed by Brinkmeyer was potentially lethal and that it was dangerous to an extent beyond that which would be contemplated by the ordinary user of the product with ordinary knowledge common to the community as to the products' characteristics.

*Id.* at 831. We concluded that a question of fact existed about whether the tequila was safe for its intended purpose without a warning or instructions about its safe use, and, accordingly, we reversed the summary judgment. *Id.* It is important to note that we did not conclude in our previous opinion that there existed a duty to warn or provide instructions about the safe use of the tequila. Rather, our prior holding was only that we could not say based upon the summary judgment evidence presented, that as a matter of law, consuming an excessive amount of alcohol in a short amount of time could cause death was common knowledge. *Id.*

Following the reversal of the summary judgment, the case proceeded to a jury trial. The jury determined that a marketing defect existed when the tequila left Brown–Forman's possession which caused Marie's death. Additionally, the jury determined that Brown–Forman's negligence caused Marie's death. The jury awarded damages to Brune which the court reduced by the percentage the jury found to be Marie's comparative responsibility. Brown–Forman now appeals from the judgment.

Among several points of error, Brown–Forman contends by point two that it owed Marie no duty to warn of the risk of death from overconsumption of alcohol within a short amount of time and that no duty exists by which it must provide instructions about the "proper" use of tequila.

In 1983, when this case arose, there existed no state or federal warning requirements for alcoholic beverages. We note that since 1988, federal law specifically provides that a "Government Warning" be placed upon all containers of alcoholic beverages. 27 U.S.C.A. § 215 (West Supp.1994).[2] Further, the federal labelling act includes a preemption section that provides no statement relating to alcoholic beverages and health, other than the statement required by section 215 shall be required under State law to be placed on any container of an alcoholic beverage, or any box, carton, or other package, that has such a container. 27 U.S.C.A. § 216 (West Supp.1994). Additionally, civil penalties may be imposed for violators of the act and the district courts of the United States are vested with jurisdiction to prevent and restrain violators of the act. *See* 27 U.S.C.A. §§ 218 & 219 (West Supp.1994). We note that if the facts of this case had arisen after November 18, 1989, the *only* warnings that could appear on alcoholic beverage bottles would be these federally mandated warnings regarding drinking during pregnancy and driving after drinking. However, because the facts of this case occurred in 1983, we review the case as if no federal warnings existed.

■ A "marketing defect" occurs when the defendant knows or should know of a potential risk of harm presented by the product, but sells it without adequately warning consumers of the danger or providing instructions for safe use. *Bristol–Meyers v. Gonzales*, 561 S.W.2d 801, 804 (Tex.1978). Thus, even a product safely designed and manufactured may be unreasonably dangerous as marketed because of a lack of adequate warnings or instructions for safe use. *Joseph E. Seagram & Sons, Inc. v. McGuire*, 814 S.W.2d 385, 387 (Tex.1991). In a marketing defect case, the focus is on whether the product's risks were reasonably foreseeable by the manufacturer or seller at the time of manufacture, whether the lack of warnings or instructions created an unreasonable danger, and whether the warnings given, if any, were adequate. The adequacy of the warning is defined in terms of the likelihood of its being noticed and its ability to be understood and to convey a sufficient indication of the risks involved. It is the absence of a warning that makes use of the product unreasonably dangerous. *Blackwell Burner Co. v. Cerda*, 644 S.W.2d 512, 516 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.).

■ It is fundamental that the existence of a legally cognizable duty is a prerequisite to all tort liability. *Graff v. Beard*, 858 S.W.2d 918, 919 (Tex.1993) (citing *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1991)). Whether a legal duty exists under a set of facts is a question of law. *Greater Houston Transp.*, 801 S.W.2d at 525. Therefore, regardless of whether the theory of liability is based upon strict liability or negligence, the threshold question is whether Brown–Forman had a duty to warn of the risk of death from overconsumption of

**2.** On or after the expiration of the 12–month period following November 18, 1988, it shall be unlawful for any person to manufacture, import, or bottle for sale or distribution in the United States any alcoholic beverage unless the container of such beverage bears the following statement:

GOVERNMENT WARNING: (1) According to the Surgeon General, women should not drink alcoholic beverages during pregnancy because of the risk of birth defects. (2) Consumption of alcoholic beverages impairs your ability to drive a car or operate machinery, and may cause health problems.

alcohol in a short period of time. We note that because there existed no federal or state legislation in 1983 regarding warnings on alcoholic beverage containers, does not mean that distillers may not be found liable for a failure to warn should courts find such a duty exists. As the *Poole* court noted, considering "the creation of new concepts of duty in tort is historically the province of the judiciary." *El Chico v. Poole*, 732 S.W.2d 306, 314 (Tex. 1987). Therefore, we consider whether a common law duty existed in 1983 for distillers to warn that overconsumption of tequila within a short amount of time may cause death and whether there existed a duty to provide instructions about the safe use of tequila. We proceed with our analysis keeping in mind that the absence of the warning is what must render the tequila unreasonably dangerous.

■ Determining whether a legal duty exists necessarily entails the interpretation and application of legal precedent as well as policy considerations. We consider social, economic, and political questions and their applicability to the facts at hand. *Graff*, 858 S.W.2d at 920 (citing *Mitchell v. Missouri–Kansas–Texas R.R. Co.*, 786 S.W.2d 659, 662 (Tex.1990)). Other factors to be considered include the extent of the risk involved, "the foreseeability and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Graff*, 858 S.W.2d at 920 (quoting *Greater Houston Transp.*, 801 S.W.2d at 525). We note that foreseeability alone is not a sufficient basis for creating a new duty. *Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex. 1994). In a failure to warn case, we consider the extent to which the tort system is capable of devising an adequate warning.

In assessing whether a legal duty exists under the facts before us, we find Justice Kilgarlin's words distinguishing moral and legal duties particularly instructive:

> In spite of a societal dynamic to expand duty, Texas still follows a general rule that Texans do not owe others general amorphous legal duties. The rule in Texas still distinguishes between moral and legal duty. Although one may have a moral duty to prevent a blind person from crossing a busy street against a light, a person has no legal duty to do so unless additional factors exist. These other factors include the existence of familial or voluntary relationships which impose a duty, statutes or ordinances which may legally require action, or special circumstances, such as having placed the blind man in his precarious position in the first place. These relationships and circumstances may be born of contract as well as other voluntary or legal origins. These are the duties that must expand and mutate in response to changes in society.

*Malek v. Miller Brewing Co.*, 749 S.W.2d 521, 523 (Tex.App.—Houston [1st Dist.] 1988, writ denied) (quoting Kilgarlin & Sterba–Boatwright, *The Recent Evolution of Duty in Texas*, 28 S.Tex.L.Rev. 241, 245 (1986)).

The common law has long recognized that the alcoholic beverage drinker maintains the ultimate power and thus the obligation to control his own drinking behavior. *Graff*, 858 S.W.2d at 921. We believe that the common law should remain focused on the drinker as the person primarily responsible for his behavior.

Though no Texas court has had to decide whether a distiller has a duty to warn of the risk of death from overconsuming alcohol in a short period of time, Texas courts have addressed whether alcoholic beverage manufacturers must warn of other risks and dangers associated with alcoholic beverages. All concluded that the alcoholic beverage manufacturer had no duty to warn of whatever risk or danger was asserted.

Before the federal labelling act became effective, a Houston court of appeals addressed whether a brewer owed a duty to place a warning on its beer stating that it may cause intoxication and render drinkers unable to operate a car. *Malek v. Miller Brewing Co.*, 749 S.W.2d 521, 523 (Tex. App.—Houston [1st Dist.] 1988, writ denied). The *Malek* court held that the manufacturer had no legal duty to warn even though the federal government later enacted the 1988 legislation requiring manufacturers to place a specific warning on their products about

driving after drinking. The *Malek* court reviewed several cases from other jurisdictions and noted that courts have had difficulty devising an adequate warning of the particular tolerance of each consumer. *Malek,* 749 S.W.2d at 523. The *Malek* court noted that the Tennessee Supreme Court's holding that the risk to a minor of death from ingestion of Everclear grain alcohol was not a hidden or unknown danger requiring a warning. *Malek,* 749 S.W.2d at 523 (citing *Pemberton v. American Distilled Spirits Co.,* 664 S.W.2d 690 (Tenn.1984)).

In *Pemberton,* an individual died after overconsuming Everclear in a short amount of time. The Tennessee Supreme Court found that the manufacturer had no duty to warn of the possibility of death in such an incident because the danger was generally known and recognized. *Pemberton,* 664 S.W.2d at 692.

We note that in 1988, when Congress enacted the federal labeling law it decided to place labels on bottles of alcoholic beverages despite existing case law concluding that manufacturers had no duty to warn consumers about the product's dangers. Before the enactment of the required federal warning, Texas courts, among others across the country, determined that manufacturers of alcoholic beverages did not owe a duty to warn that drinking alcoholic beverages may cause alcoholism or intoxication, or to warn of the dangers of driving after drinking alcoholic beverages. *Seagram & Sons, Inc. v. McGuire,* 814 S.W.2d 385 (Tex.1991) (manufacturer has no duty to warn of danger of developing alcoholism from prolonged and excessive consumption of product); *Malek v. Miller Brewing Co.,* 749 S.W.2d 521 (Tex. App.—Houston [1st Dist.] 1988, writ denied) (no duty to warn that beer may cause intoxication); *Morris v. Adolph Coors Co.,* 735 S.W.2d 578 (Tex.App.—Fort Worth 1987, writ ref'd n.r.e.) (manufacturer has no duty to warn that overconsumption of alcoholic beverage may impair the motor skills and judgment necessary to drive automobile). Despite this case law, the only warnings the federal government required to be placed on alcoholic beverage bottles were regarding drinking during pregnancy and driving after drinking. The federal government when considering the federally mandated warning label, did not require a warning about consuming large quantities of beverage alcohol within a short period of time.

When choosing to enter the business of manufacturing alcoholic beverages a manufacturer should make an effort to inform its users about risks and dangers associated with its product. That effort may include a larger public education campaign rather than simply labelling a bottle. In fact, education may be the only remedy we have in preventing binge drinking. Despite education, however, there will always be individuals who, though informed about the dangers associated with the use of alcoholic beverages, choose to misuse the product. The circumstances behind an individual's choice to misuse beverage alcohol are profoundly complex and will not be addressed by placing a few warning words on the outside of a bottle. The warning and education must come long before an individual reaches for a bottle of alcohol. Holding an alcoholic beverage manufacturer financially responsible for the death of an individual who consumed a large quantity of alcohol in a short amount of time does not answer the more direct question about why the individual would consume a known dangerous product in such a quantity.

As with smoking, perhaps with an increase in education to the public about the dangers of consuming large amounts of alcoholic beverages within a short period of time, acceptance of such activity will diminish.

Alcoholic beverages are dangerous products. Many human tragedies can be traced to an individual's use of alcohol. Nevertheless, this country has made a political decision to allow alcoholic beverages to be sold in the marketplace. The use of alcoholic beverages has been regulated greatly both at the federal and state levels of government. While alcohol is accepted as a dangerous product, it has been found not "unreasonably dangerous." The Restatement provides that manufacturers of alcoholic beverages are not required to warn about the dangers of its product when "consumed in excessive quantity."

The standard for common knowledge is the overall knowledge common to the

community that is a basis for determining a duty to warn, not what individual users may or may not know. Many products cannot possibly be made entirely safe for all consumption. Restatement § 402A, comment i. The product sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. *Id.* While courts have determined that it is within common knowledge that harm may come to those drinking alcohol, we cannot accept that one would think that drinking a large quantity of alcohol quickly would somehow be less harmful. While morally it might appear prudent to require manufacturers of alcoholic beverages to place a warning on alcoholic beverages about the danger of death after ingesting large amounts of alcohol over a short period of time, we find no legal duty to do so.

Considering the extensive involvement of the federal and state government in regulating alcoholic beverages, we conclude that the subject of warnings on alcoholic beverages and placing instructions for use on an alcoholic beverage container should be left to the legislative process. The issues relevant to this case have for so long been political issues we conclude that courts are ill-equipped to develop effective and feasible warnings and instructions.

A former generation of Americans found that [the] evils [of whiskey] outweighed and advantages to be derived from using whiskey as a beverage and made a political decision forbidding its manufacture and sale for such purposes. But the noble experiment of prohibition did not work and [prohibition was] ... repealed. This again represented a political judgment....

In light of this political judgment it would seem arbitrary for courts to hold a whiskey distiller liable for the foreseeable injurious effects to some people of whiskey which has standard ingredients and qualities. The political judgment would seem to foreclose a judicial holding that the recognized dangers of whiskey render it unreasonably dangerous. Nor is it easy to think of an effective warning or feasible precaution on the distiller's part. Precautions of this kind are again largely matter to be adopted by the political process and enforced against (or by) distributors rather than manufacturers of whiskey.

Harper, James & Gray, The Law of Torts § 28.8 at 388–89.

We understand that binge drinking and underage drinking is a problem. However, merely because it is foreseeable that an underage drinker may gain access to alcoholic beverages and misuse them is not a reason to impose a duty to warn about death from overconsumption and impose liability for the drinker's death upon the distiller. When considering the social, economic, and political questions and their applicability to the facts at hand, we conclude that no legal duty existed on the part of Brown–Forman to place a warning on its containers of tequila that overconsumption of tequila within a short period of time may cause death.

Additionally, because of the inability to fashion effective instructions about the proper use of tequila, we conclude that no legal duty exists on the part of Brown–Forman to place instructions for proper use on its containers of tequila. Brune suggested placing a chart on bottles of alcoholic beverages that would provide general information for the "average" person about levels of alcohol consumption. However, Joe Darnell, former TABC general counsel, testified that a chart like the one proposed by Brune would not have been approved by the TABC because it would have implied a safe "dosage" of alcohol consumption—a deceptive implication. There are too many variables, such as weight, age, and health among other things that affect blood alcohol levels and their effect on a person that such a warning would be ineffective. *See Malek,* 749 S.W.2d at 523; *Graff,* 858 S.W.2d at 921.

Even if a warning could be fashioned, there existed no evidence that Marie would have heeded the warning. The evidence was that Marie had received and disregarded warnings about the abuse of alcoholic beverages generally. We note that a textbook used by Marie in her high school health class explains that after drinking 10–20 cocktails, death can result. She was intoxicated when

she illegally purchased the tequila and continued to drink it after her friends took the bottle away from her and told her to stop drinking. If we assume that a warning had been on the bottle advising about the dangers of drinking large quantities of alcohol within a short period of time, the evidence shows that she would have disregarded it.

■ Before concluding, we address Brune's argument regarding application of the "law of the case" doctrine. Brune argues that in reversing the previous summary judgment we "in essence found that a duty to warn would exist if a jury determined that the [common knowledge] exception did not apply." Brune continues the argument by concluding that we determined previously that there was a "duty" to warn or instruct as a matter of law. Brune asserts that because we have already ruled on this question of law, we are prevented by the law of the case doctrine from addressing the issue of duty at this point in the proceedings.

■ The law of the case doctrine is a principle by which the initial determinations of questions of law in a case are held to govern throughout the subsequent stages of the case. *Med Center Bank v. Fleetwood,* 854 S.W.2d 278, 283 (Tex.App.—Austin 1993, writ denied) (citing *Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex.1986)). The doctrine operates to narrow the issues in successive stages of litigation and is supported by policy goals of uniformity of decisions and judicial economy. *Id.* The doctrine applies only to questions of law and not to questions of fact. *Id.*

■ Application of the law of the case, however, is flexible and must be left to the discretion of the court and determined according to the particular circumstances of the case. *Id.* at n. 6. The decision of whether a prior decision in the same case will be reopened is a matter within the discretion of the appellate court. *Id.* An appellate court may consider all issues properly before it, and make such rulings as it deems proper under the record in the case, irrespective of a prior opinion. *Id.*

■ Where there has been a reversal of a summary judgment in favor of a defendant followed by a trial on the merits with an appeal, the law as stated in the summary judgment appeal does not necessarily control the case on the appeal from the trial on the merits. *Id.* In this case, we issued our prior opinion on review of a summary judgment granted in favor of Brown–Forman. In reviewing summary judgments granted in favor of defendants, we indulge all inferences and give plaintiffs every opportunity to show evidence of the elements of their cause of action. In this case, we indulged every inference in favor of Brune to show the exception to common knowledge. We were strongly influenced by Brune's raising factual issues about common knowledge of the danger of death from consuming large amounts of alcoholic beverages in a short amount of time. At the time of our prior opinion, based on the record before us, we were not prepared to state as a matter of law that it was common knowledge that there existed a danger of death from consuming a large quantity of alcohol in a short amount of time. We reversed the summary judgment because we were not prepared to state that no duty existed as a matter of law. However, at no point in our previous opinion did we ever hold that if we concluded that the danger was not the subject of common knowledge that there existed a legal duty to warn on the part of Brown–Forman. Additionally, the political basis for finding no duty to warn was never asserted as a ground for Brown–Forman's summary judgment and was not an issue in our previous opinion.

We sustain point two. Because this point of error is dispositive, we decline to address Brown–Forman's remaining points of error and Brune's cross-points. Tex.R.App.P. 90(a).

Finding that Brown–Forman had no legal duty to warn Marie about the dangers of consuming a large amount of tequila over a short time period and no duty to provide instructions about the proper use of tequila, we reverse the trial court's judgment, render judgment for Brown–Forman, and render that Brune take nothing.