Robert H. SHIELDS, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–98–00560–CV.

Court of Appeals of Texas, Austin.

Aug. 31, 2000.

John Alan Goren, Dallas, for Appellant.

Maureen Powers, Asst. Atty. Gen., Austin, for State of Texas.

Before Chief Justice ABOUSSIE, Justices KIDD and B.A. SMITH.

MARILYN ABOUSSIE, Chief Justice.

The State of Texas sued appellant Robert Shields for an injunction and restitution based on violations of the Texas Securities Act. *See* The Securities Act, Tex.Rev. Civ. Stat. Ann. arts. 581–1—42 (West 1964 & Supp.2000) (the Act). The State alleged that, while working as sales manager for Southard Securities Corporation, Shields engaged in fraudulent securities practices in selling interests in oil and gas wells issued by Southard's parent HLS Energy Co., Inc. The cause was tried to a jury, which found for the State. The trial court rendered an order permanently enjoining Shields from committing fraudulent securities practices and awarding restitution in the total amount of $977,195.21 to twelve investors. We will affirm the trial court's order.

■ The State contends at the outset that six issues Shields raises on appeal should be resolved against him by applying the law-of-the-case doctrine. In the first appeal of this cause, this Court reversed the trial court's permanent injunction and remanded the cause on the ground that the court's injunction exceeded the scope of the Act. *See Shields v. State of Tex.*, 936 S.W.2d 711, 713–14 (Tex.App.—Austin 1996, no writ). The Court declined to discuss Shields' remaining points of error, stating that "none of them demonstrate

reversible error upon which we may, as a matter of law, render judgment on appeal." *Id.* at 714.

■ The law-of-the-case doctrine is a principle by which the initial determinations of questions of law in a case are held to govern throughout subsequent stages of the litigation. *Brown Forman Corp. v. Brune,* 893 S.W.2d 640, 648 (Tex.App.—Corpus Christi 1994, writ denied). The doctrine is applied flexibly according to the circumstances of the particular case, however, and the determination whether a prior decision in the same case will be reopened is a matter within the discretion of the appellate court. *Id.* Having decided in the prior appeal that the scope of the injunction merited a remand, this Court did not set out the legal reasoning for resolving Shields' remaining points and determined only that none demonstrated error that justified, as a matter of law, rendition of judgment; this Court did not determine whether any of Shields' remaining points would have justified a remand. Under these circumstances, we decline to apply the law of the case to this appeal.

■ In his second issue, Shields contends that the injunction against him exceeds the scope of the Act and the State's pleadings. We first address Shields' argument that the injunction exceeds the scope of the pleadings. In its fifth amended petition, the State alleged that Shields had engaged in fraud and fraudulent practices, materially helped other persons to do the same, and engaged in other violations of the Act, as enumerated. The State then pleaded fourteen specific acts that Shields had committed, such as misrepresenting to potential investors that previous HLS investors had received a return of four to five times the amount initially invested, misrepresenting to investors that an investment with HLS involved little or no risk, failing to disclose that the securities offered for sale were not registered with the State Securities Board in violation of Texas law, and receiving sales commissions

so excessive as to be unconscionable. The State prayed that Shields be permanently enjoined from continuing such fraudulent practices or doing any act to further those practices in violation of the Securities Act.

The court's injunction does not repeat the fourteen acts pleaded by the State, but is phrased in more general terms. The order first enjoins Shields from committing any fraudulent, misleading, or deceptive act relating to the issuance, promotion, sale, or distribution of any security. It then states that fraudulent, misleading, or deceptive acts include, without limitation, nine enumerated actions; these actions include the employment of any scheme to defraud, any misrepresentation of a relevant fact, any representation as to the future not made honestly and in good faith, and gaining an unconscionable underwriting or promotion fee or profit or selling or management commission or profit.[1]

■ Persons seeking a permanent injunction must be specific in pleading the relief sought, and courts are without authority to grant relief beyond that so specified. *Hitt v. Mabry*, 687 S.W.2d 791, 795 (Tex.App.—San Antonio 1985, no writ). Yet, an injunction should be broad enough to prevent a repetition of the evil sought to be corrected. *San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 156 Tex. 7, 291 S.W.2d 697, 702 (1956); *Hitt*, 687 S.W.2d at 795. The court can either enjoin acts that are identical to those engaged in before the injunction or, as will more likely be needed, acts that are in somewhat different form calculated to circumvent the injunction as written. *San Antonio Bar Ass'n*, 291 S.W.2d at 702. The State charged that Shields engaged in fraudulent practices in violation of the Act, illustrated those practices by alleging fourteen specific acts, and prayed that the court enjoin Shields from engaging in the fraudulent acts alleged. The language of the court's order largely tracks that of articles 581–4(F) and 581–32 of the Act, which respectively define and authorize injunctions against fraudulent securities practices. *See* Act art. 581–4(F) (West 1964) & art. 581–32 (West Supp.2000). We find the injunction here to be in keeping with the tenor of the State's pleading and reject Shields' argument that the court was limited to enjoining the fourteen specific acts alleged by the State.

■ Shields also complains that the language of the order is so broad as to be vague and unenforceable. He argues that

1. The court's injunctive relief follows:
   IT IS THEREFORE ORDERED, ADJUDGED and DECREED that Defendant Shields, his employees, agents, representatives, or any other entity acting for or on his behalf, are permanently enjoined and commanded to desist and refrain from the following acts:
   A. Committing any fraud or fraudulent acts or practices or false, misleading or deceptive acts or practices in connection with the issuance, sale, offer to sell, promotion, negotiations for sale, advertisement, dealing, distribution, or attempt to dispose for value of any security. Fraud or misleading or deceptive acts or practices shall include, but not be limited to:
   (1) Employing any device, scheme or artifice to defraud;
   (2) Any misrepresentation of a relevant fact;
   (3) Any promise or representation or prediction as to the future not made honestly and in good faith;
   (4) Any intentional failure to disclose a material fact;
   (5) Gaining, directly or indirectly, through the sale of any security of an underwriting or promotion fee or profit, selling or managing commission or profit, so gross or exorbitant as to be unconscionable;
   (6) Any false pretense, representation or promise;
   (7) Making or attempting to make fictitious or pretended purchases or sales of securities;
   (8) Any practice or transaction or course of business relating to the purchase or sale of securities which is fraudulent or which has operated or would operate as a fraud upon the purchaser;
   (9) Materially aiding any person who in any way is participating in fraudulent practices.

the conduct prohibited by the injunction is unclear because the nine listed acts are not exclusive. We determine, however, that the order sufficiently informs Shields that he is prohibited from engaging in fraudulent practices when dealing in securities and that the nine examples provide adequate guidance as to the limits between acceptable and unacceptable behavior in that regard.

Shields argues that the court exceeded the scope of the Act by purporting to enjoin his actions conducted wholly outside Texas. Although not part of its decretal language, the court stated in the order that Shields had engaged in fraudulent practices as defined by the Act and that the court ordered Shields permanently enjoined from violating the Act. Within this context, the court then ordered Shields to refrain from committing any fraudulent act when dealing in securities. We therefore determine that the order enjoins Shields only from fraudulent securities practices that violate the Act. We overrule issue two.

■ Shields argues in issues three and four that the injunction is not supported by the evidence or the jury findings. Within these issues, Shields argues that jury questions one and two should not have been submitted in broad form. In question one, the court asked, "Did Robert H. Shields engage in fraud in the sale of securities while he was with Southard Securities?" The court asked in question two, "Did Robert H. Shields, with intent to deceive or defraud or with reckless disregard for the truth or the law, materially aid any person in participating in fraudulent practices in the sale or offer for sale of securities?" The jury found that Shields had engaged in fraud and had materially aided others in participating in fraudulent practices. Shields argues that the court should instead have asked the jury to determine whether he engaged in each spe-

cific act alleged by the State. Failing to confine the jury to specific conduct, Shields contends, allowed the jury to go beyond the violations pleaded and deprived the court of the proper factual basis for designing injunctive relief.

■ Although a party to an equitable action has the right to a trial by jury, only ultimate issues of fact are submitted for jury determination. The jury does not determine the expediency, necessity, or propriety of equitable relief. *State v. Texas Pet Foods, Inc.,* 591 S.W.2d 800, 803 (Tex.1979). The determination whether to grant an injunction based on ultimate issues of fact found by the jury is for the trial court, exercising chancery powers, and not the jury. *Id.* Although in Texas jury findings on issues of fact are binding, equitable principles and the relief afforded by equity continue to be applied by the court itself. *Id.* The court therefore did not err in submitting questions one and two broadly. *See* Tex.R. Civ. P. 277. We have already determined that the court was not limited to enjoining only the specific acts pleaded by the State. And because the court alone fashions equitable relief, it was not confined to the literal findings of the jury in designing the injunction.

■ Shields complains that insufficient evidence supports those parts of the injunction that prohibit him from making fictitious purchases or sales of securities and prohibit him from gaining an unconscionable underwriting, promotion, selling, or managing fee. Shields also contends that jury questions should have been submitted regarding these particular acts. Article 581–32 of the Act empowers the court to enjoin a person who has engaged in fraudulent securities practices from further engaging in them or from doing any act in violation of the Securities Act. Art. 581–32(A).[2] Shields does not challenge the

2. Article 581–32(A) provides that a court can enjoin a person who has engaged in any of the practices declared fraudulent by the Act "from continuing such fraudulent practices or engaging therein or doing any act or acts in furtherance thereof or in violation of this Act." Art. 581–32(A) (West Supp.2000).

sufficiency of the evidence to support the remaining portions of the injunction or the jury's finding that he engaged in fraud in the sale of securities.

■ The Act's purpose is to regulate the sale of securities and to protect the public from fraud. *Flowers v. Dempsey–Tegeler & Co.,* 472 S.W.2d 112, 115 (Tex. 1971). Courts are to construe the Act to protect investors. Art. 581–10–1(B) (West Supp.2000). In view of the Act's purpose and the broad language of article 581–32(A), the court was authorized to enjoin Shields from engaging in any act or practice declared fraudulent by the Act. The court did not err in enjoining Shields from making fictitious sales and gaining unconscionable fees, both of which are legally prohibited by the Act. Nor did the court err in enjoining Shields from engaging in fraudulent securities practices without limiting the securities to the oil and gas investments described at trial. The principle that the court rather than the jury exercises equitable powers answers Shields' complaint that the court could not include these prohibitions in the order without submitting specific jury questions thereon. We overrule issues three and four.

■ In his first issue, Shields contends that the trial court violated Texas Rule of Civil Procedure 683 by failing to state in the order the reasons for issuing the injunction. Shields did not raise this contention in the trial court, however, and has waived it for appellate review. Tex. R.App. P. 33.1(a). In any event, the requirement of Rule 683 that every order of injunction set forth the reasons supporting its issuance applies only to temporary injunctions, in which the relief ordered is ancillary to the ultimate relief sought, and not to permanent injunctions. *Carrell v. Richie,* 697 S.W.2d 43, 46 (Tex.App.—Austin 1985, writ ref'd n.r.e.); *Spinuzzi v. Town of Corinth,* 665 S.W.2d 530, 534 (Tex.App.—Fort Worth 1983, no writ); *Texas Liquor Control Bd. v. Bacon,* 443 S.W.2d 312, 317 (Tex.Civ.App.—Austin

1969), *rev'd on other grounds,* 456 S.W.2d 891 (Tex.1970). Additionally, Shields has not shown how the court's failure to state the reasons for issuing the injunction harmed him. *See* Tex.R.App. P. 44.1(a). We therefore overrule Shields' first issue.

■ In his fifth issue, Shields argues that the State presented no evidence of his securities activities after 1991 and submitted no question to the jury as to the likelihood of future violations. Shields maintains that article 581–32 of the Act required the trial court to find, based on the evidence presented, that a reasonable prospect of future violations by Shields exists, such that injury would occur if the injunction were not issued. Because a specific statute authorizes the injunction issued here, the court need find only that the statutory provisions are satisfied and need not otherwise determine future probable injury. *MortgageBanc & Trust, Inc. v. State,* 718 S.W.2d 865, 869 (Tex.App.—Austin 1986, no writ); *Rio Grande Oil Co. v. State,* 539 S.W.2d 917, 921 (Tex.Civ. App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.). Article 581–32 allows the State to seek an injunction against a person who "has engaged in, is engaged in, or is about to be engaged in" any practice or transaction declared fraudulent by the Act and authorizes the court to issue an injunction against such a person. Art. 581–32(A). Because injunctive relief can be ordered under the Act based on past actions alone, we overrule issue five.

■ In his sixth issue, Shields argues that the court erroneously ordered restitution to investors for the net amount of their investment rather than the amount of commissions Shields received from them. The court ordered Shields to make restitution to twelve individual investors in the total amount of $977,195.21. The order of restitution was based on the jury's answer to a question asking how much money Shields obtained from each investor by fraudulent practices, less the amount the investor received from the investment.

Shields' commissions amounted to ten percent of the sales he personally made and three percent of the sales made by other salespeople. Shields remitted the funds provided by the investors to HLS ànd owned no personal stake in HLS. Assuming a full ten percent commission on each sale, Shields would have earned about $103,450 from the investors in question.

The Act authorizes the court to award restitution to a victim of fraudulent securities practices: "The court may order the defendant to deliver to the person defrauded the amount of money or the property that the defendant obtained from the person by the fraudulent practices." Art. 581–32(B) (West Supp.2000). Shields argues that by requiring delivery of the amount of money the defendant obtained, the Act means only the amount of money that he personally obtained in the form of commissions. The remedial goals of the Act focus on investors, however, rather than on sellers. To effect the Act's purpose of protecting the public from fraudulent securities practices, we determine that Shields, despite being only an intermediary in the sales process, can be held liable for the full amount of each defrauded individual's net investment loss. *See, e.g., Brown v. Cole,* 155 Tex. 624, 291 S.W.2d 704, 711 (1956) (intermediary seller was liable to buyers for full purchase price of security under article 581–33(A) as it existed before being amended). We overrule issue six.

In his seventh and eighth issues, Shields argues that he cannot be held liable in restitution for the conduct of other employees of Southard. Shields asserts that the court erroneously held him liable for the acts of other employees either by holding him vicariously liable or by considering him an abettor of the other employees. While the Act authorizes injunctive relief against any person who has materially aided another to commit a fraudulent securities practice, restitution, which may be sought in the same action as an injunction, is authorized for "a victim of fraudulent practices." Art. 581–32(A), (B). Assuming Shields' argument has merit, however, the court's judgment can be supported on an independent, unchallenged ground.

The trial court submitted two questions to the jury, which the jury was required to answer as to eighteen individual investors. In question six, the court asked, "Did Robert H. Shields engage in fraudulent practices in the sale of securities to the individuals listed below?" In question seven, the court asked, "Did Robert H. Shields materially aid salespersons to engage in fraudulent practices in the sale of securities to the individuals listed below, with intent to deceive or defraud or with reckless disregard for the truth or the law?" Having answered both questions affirmatively as to each investor, the jury was then asked to determine the net amount of money Shields obtained from each investor by fraudulent practices. The restitution awarded investors could rest on the jury's answer to either question six or question seven. Because Shields does not challenge the jury's answer to question six, we presume that it supports the judgment of restitution. *Johnson v. Coggeshall,* 578 S.W.2d 556, 560 (Tex.Civ.App.—Austin 1979, no writ).

Shields also contends that the trial court erred in admitting hearsay statements attributed to sales representatives of Southard other than Shields. Shields fails to show in the record where any of these hearsay statements were admitted, and in any event, does not show that the judgment turns on the particular statements admitted. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753–54 (Tex.1995). Having failed to show error or harm, Shields is not entitled to relief on this argument. *See* Tex.R.App. P. 33.1, 44.1(a). We therefore overrule issues seven and eight.

In issue nine, Shields argues that the State's claims for restitution are barred by limitations. Shields reasons that because investors pursuing the private cause of action for restitution autho-

rized by article 581–33 must sue within the time prescribed by that article, the same time restriction applies to the State's suit for restitution under article 581–32. *See* art. 581–33(H) (West Supp.2000). Because article 581–33 both creates a private right of action and incorporates a time limit within which the investor must initiate the action, the limitation qualifies the right and becomes an element of the statutory cause of action itself. *See California v. Copus,* 158 Tex. 196, 309 S.W.2d 227, 231 (1958). This qualification on filing suit is not considered to be a statute of limitations. *See id.* The express time limit in article 581–33 being an essential element of the private cause of action for restitution, we cannot agree that the legislature intended to require, but omitted to state, the same element in the State's cause of action for restitution in article 581–32.[3]

Even if Shields were correct that the time limit he advocates constitutes a statute of limitations, it is well settled that the State in its sovereign capacity is not subject to the defense of limitations. *State v. Durham,* 860 S.W.2d 63, 67 (Tex. 1993); *see* Tex. Civ. Prac. & Rem.Code Ann. § 16.061 (West Supp.2000). The rationale for this immunity is to allow a governmental entity to enforce its laws to protect the general public. *Waller v. Sanchez,* 618 S.W.2d 407, 409 (Tex.Civ.App.— Corpus Christi 1981, no writ). Article 581–32(B), authorizing the State to sue for restitution on behalf of individual investors, is an exercise of the legislature's police power to constrain the conduct of securities dealers for the public's protection. *See Atwood v. State,* 135 Tex.Crim. 543, 121 S.W.2d 353, 355 (1938). The fact that the money the State recovers benefits individual investors does not in any way alter the character of the suit as one to enforce the state's securities laws. We therefore hold that the State acted in its sovereign capacity in suing for restitution and was not subject to the time limit that Shields proposes. We overrule point nine.

In issues ten and eleven, Shields contends that the trial court should have admitted evidence of a private lawsuit against him for violations of the Act and that his exoneration in that suit should have precluded restitution in favor of three investors involved in both suits. By bill of exception, Shields showed that in 1991 numerous individual investors sued Shields, Southard Securities Corporation, H.L. Southard, and others claiming violations of federal, Texas, and other state securities acts; three plaintiffs in that lawsuit, Peter Loveall, George Loveall, Jr., and Arthur Sisson, are also named investors in this suit.[4] The Harris County district court compelled the parties in the private lawsuit to arbitrate their claims. In their award made in 1993, the arbitrators denied all claims against Shields.

Arbitration in Texas can be either nonbinding or binding and enforceable as a contract. Unless the parties stipulate otherwise in advance, any award is not binding and serves only as a basis for the parties' further settlement negotiations. Tex. Civ. Prac. & Rem.Code Ann. § 154.027 (West 1997). Peter Loveall testified for the bill of exception that proceedings in the private lawsuit were still ongoing and that negotiations had been occurring. Assuming that the State could be bound by the result of a suit to which it was not a party, the record does not show that the parties have achieved any final

---

**3.** Article 581–32(B) states in its entirety:
The Attorney General may, in an action under Subsection A of this section [authorizing the State to obtain an injunction] or in a separate action in District Court, seek restitution for a victim of fraudulent practices. The court may order the defendant to deliver to the person defrauded the amount of money or the property that the defendant obtained from the person by the fraudulent practices.
Act art. 581–32(B) (West Supp.2000).

**4.** Because the jury found that Shields obtained no money from Arthur Sisson by fraudulent practices, we will consider in this issue only the Lovealls' claims.

result in the private lawsuit. The arbitrators' award could well have served only to launch further settlement negotiations. *See id.* Because the private lawsuit and arbitration never resulted in a final adjudication, the trial court did not err in refusing to admit evidence about it or to deny restitution to the Lovealls.

■ In his twelfth issue, Shields asserts that the court erred in awarding restitution to two individual investors, each of whom invested only on behalf of a separate legal entity. At the charge conference, however, Shields refused to agree to submit these investors to the jury in a representative capacity, insisting that they not be submitted at all. Because Shields refused the State's offer to submit questions in the form he now urges, he has waived any error in the submission. *See* Tex.R.App. P. 33.1(a). We overrule issue twelve.

Having considered and overruled each of Shields' issues, we affirm the order of the trial court.