TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00560-CV






Robert H. Shields, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NO. 94-01036, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING 







 The State of Texas sued appellant Robert Shields for an injunction and restitution
based on violations of the Texas Securities Act. See The Securities Act, Tex. Rev. Civ. Stat.
Ann. arts. 581-1--42 (West 1964 & Supp. 2000) (the Act). The State alleged that, while working
as sales manager for Southard Securities Corporation, Shields engaged in fraudulent securities
practices in selling interests in oil and gas wells issued by Southard's parent HLS Energy Co.,
Inc. The cause was tried to a jury, which found for the State. The trial court rendered an order
permanently enjoining Shields from committing fraudulent securities practices and awarding
restitution in the total amount of $977,195.21 to twelve investors. We will affirm the trial court's
order.

 The State contends at the outset that six issues Shields raises on appeal should be
resolved against him by applying the law-of-the-case doctrine. In the first appeal of this cause,
this Court reversed the trial court's permanent injunction and remanded the cause on the ground
that the court's injunction exceeded the scope of the Act. See Shields v. State of Tex., 936
S.W.2d 711, 713-14 (Tex. App.--Austin 1996, no writ). The Court declined to discuss Shields'
remaining points of error, stating that "none of them demonstrate reversible error upon which we
may, as a matter of law, render judgment on appeal." Id. at 714.

 The law-of-the-case doctrine is a principle by which the initial determinations of
questions of law in a case are held to govern throughout subsequent stages of the litigation. 
Brown Forman Corp. v. Brune, 893 S.W.2d 640, 648 (Tex. App.--Corpus Christi 1994, writ
denied). The doctrine is applied flexibly according to the circumstances of the particular case,
however, and the determination whether a prior decision in the same case will be reopened is a
matter within the discretion of the appellate court. Id. Having decided in the prior appeal that
the scope of the injunction merited a remand, this Court did not set out the legal reasoning for
resolving Shields' remaining points and determined only that none demonstrated error that
justified, as a matter of law, rendition of judgment; this Court did not determine whether any of
Shields' remaining points would have justified a remand. Under these circumstances, we decline
to apply the law of the case to this appeal.

 In his second issue, Shields contends that the injunction against him exceeds the
scope of the Act and the State's pleadings. We first address Shields' argument that the injunction
exceeds the scope of the pleadings. In its fifth amended petition, the State alleged that Shields had
engaged in fraud and fraudulent practices, materially helped other persons to do the same, and
engaged in other violations of the Act, as enumerated. The State then pleaded fourteen specific
acts that Shields had committed, such as misrepresenting to potential investors that previous HLS
investors had received a return of four to five times the amount initially invested, misrepresenting
to investors that an investment with HLS involved little or no risk, failing to disclose that the
securities offered for sale were not registered with the State Securities Board in violation of Texas
law, and receiving sales commissions so excessive as to be unconscionable. The State prayed that
Shields be permanently enjoined from continuing such fraudulent practices or doing any act to
further those practices in violation of the Securities Act.

 The court's injunction does not repeat the fourteen acts pleaded by the State, but
is phrased in more general terms. The order first enjoins Shields from committing any fraudulent,
misleading, or deceptive act relating to the issuance, promotion, sale, or distribution of any
security. It then states that fraudulent, misleading, or deceptive acts include, without limitation,
nine enumerated actions; these actions include the employment of any scheme to defraud, any
misrepresentation of a relevant fact, any representation as to the future not made honestly and in
good faith, and gaining an unconscionable underwriting or promotion fee or profit or selling or
management commission or profit. (1)

 Persons seeking a permanent injunction must be specific in pleading the relief
sought, and courts are without authority to grant relief beyond that so specified. Hitt v. Mabry,
687 S.W.2d 791, 795 (Tex. App.--San Antonio 1985, no writ). Yet, an injunction should be broad
enough to prevent a repetition of the evil sought to be corrected. San Antonio Bar Ass'n v.
Guardian Abstract & Title Co., 291 S.W.2d 697, 702 (Tex. 1956); Hitt, 687 S.W.2d at 795. The
court can either enjoin acts that are identical to those engaged in before the injunction or, as will
more likely be needed, acts that are in somewhat different form calculated to circumvent the
injunction as written. San Antonio Bar Ass'n, 291 S.W.2d at 702. The State charged that Shields
engaged in fraudulent practices in violation of the Act, illustrated those practices by alleging
fourteen specific acts, and prayed that the court enjoin Shields from engaging in the fraudulent
acts alleged. The language of the court's order largely tracks that of articles 581-4(F) and 581-32
of the Act, which respectively define and authorize injunctions against fraudulent securities
practices. See Act art. 581-4(F) (West 1964) & art. 581-32 (West Supp. 2000). We find the
injunction here to be in keeping with the tenor of the State's pleading and reject Shields' argument
that the court was limited to enjoining the fourteen specific acts alleged by the State.

 Shields also complains that the language of the order is so broad as to be vague and
unenforceable. He argues that the conduct prohibited by the injunction is unclear because the nine
listed acts are not exclusive. We determine, however, that the order sufficiently informs Shields
that he is prohibited from engaging in fraudulent practices when dealing in securities and that the
nine examples provide adequate guidance as to the limits between acceptable and unacceptable
behavior in that regard.

 Shields argues that the court exceeded the scope of the Act by purporting to enjoin
his actions conducted wholly outside Texas. Although not part of its decretal language, the court
stated in the order that Shields had engaged in fraudulent practices as defined by the Act and that
the court ordered Shields permanently enjoined from violating the Act. Within this context, the
court then ordered Shields to refrain from committing any fraudulent act when dealing in
securities. We therefore determine that the order enjoins Shields only from fraudulent securities
practices that violate the Act. We overrule issue two.

 Shields argues in issues three and four that the injunction is not supported by the
evidence or the jury findings. Within these issues, Shields argues that jury questions one and two
should not have been submitted in broad form. In question one, the court asked, "Did Robert H.
Shields engage in fraud in the sale of securities while he was with Southard Securities?" The
court asked in question two, "Did Robert H. Shields, with intent to deceive or defraud or with
reckless disregard for the truth or the law, materially aid any person in participating in fraudulent
practices in the sale or offer for sale of securities?" The jury found that Shields had engaged in
fraud and had materially aided others in participating in fraudulent practices. Shields argues that
the court should instead have asked the jury to determine whether he engaged in each specific act
alleged by the State. Failing to confine the jury to specific conduct, Shields contends, allowed
the jury to go beyond the violations pleaded and deprived the court of the proper factual basis for
designing injunctive relief.

 Although a party to an equitable action has the right to a trial by jury, only ultimate
issues of fact are submitted for jury determination. The jury does not determine the expediency,
necessity, or propriety of equitable relief. State v. Texas Pet Foods, Inc., 591 S.W.2d 800, 803
(Tex. 1979). The determination whether to grant an injunction based on ultimate issues of fact
found by the jury is for the trial court, exercising chancery powers, and not the jury. Id. 
Although in Texas jury findings on issues of fact are binding, equitable principles and the relief
afforded by equity continue to be applied by the court itself. Id. The court therefore did not err
in submitting questions one and two broadly. See Tex. R. Civ. P. 277. We have already
determined that the court was not limited to enjoining only the specific acts pleaded by the State. 
And because the court alone fashions equitable relief, it was not confined to the literal findings
of the jury in designing the injunction.

 Shields complains that insufficient evidence supports those parts of the injunction
that prohibit him from making fictitious purchases or sales of securities and prohibit him from
gaining an unconscionable underwriting, promotion, selling, or managing fee. Shields also
contends that jury questions should have been submitted regarding these particular acts. Article
581-32 of the Act empowers the court to enjoin a person who has engaged in fraudulent securities
practices from further engaging in them or from doing any act in violation of the Securities Act. 
Art. 581-32(A). (2) Shields does not challenge the sufficiency of the evidence to support the
remaining portions of the injunction or the jury's finding that he engaged in fraud in the sale of
securities.

 The Act's purpose is to regulate the sale of securities and to protect the public from
fraud. Flowers v. Dempsey-Tegeler & Co., 472 S.W.2d 112, 115 (Tex. 1971). Courts are to
construe the Act to protect investors. Art. 581-10-1(B) (West Supp. 2000). In view of the Act's
purpose and the broad language of article 581-32(A), the court was authorized to enjoin Shields
from engaging in any act or practice declared fraudulent by the Act. The court did not err in
enjoining Shields from making fictitious sales and gaining unconscionable fees, both of which are
legally prohibited by the Act. Nor did the court err in enjoining Shields from engaging in
fraudulent securities practices without limiting the securities to the oil and gas investments
described at trial. The principle that the court rather than the jury exercises equitable powers
answers Shields' complaint that the court could not include these prohibitions in the order without
submitting specific jury questions thereon. We overrule issues three and four.

 In his first issue, Shields contends that the trial court violated Texas Rule of Civil
Procedure 683 by failing to state in the order the reasons for issuing the injunction. Shields did
not raise this contention in the trial court, however, and has waived it for appellate review. Tex.
R. App. P. 33.1(a). In any event, the requirement of Rule 683 that every order of injunction set
forth the reasons supporting its issuance applies only to temporary injunctions, in which the relief
ordered is ancillary to the ultimate relief sought, and not to permanent injunctions. Carrell v.
Richie, 697 S.W.2d 43, 46 (Tex. App.--Austin 1985, writ ref'd n.r.e.); Spinuzzi v. Town of
Corinth, 665 S.W.2d 530, 534 (Tex. App.--Fort Worth 1983, no writ); Texas Liquor Control Bd.
v. Bacon, 443 S.W.2d 312, 317 (Tex. Civ. App.--Austin 1969), rev'd on other grounds, 456
S.W.2d 891 (Tex. 1970). Additionally, Shields has not shown how the court's failure to state the
reasons for issuing the injunction harmed him. See Tex. R. App. P. 44.1(a). We therefore
overrule Shields' first issue.

 In his fifth issue, Shields argues that the State presented no evidence of his
securities activities after 1991 and submitted no question to the jury as to the likelihood of future
violations. Shields maintains that article 581-32 of the Act required the trial court to find, based
on the evidence presented, that a reasonable prospect of future violations by Shields exists, such
that injury would occur if the injunction were not issued. Because a specific statute authorizes
the injunction issued here, the court need find only that the statutory provisions are satisfied and
need not otherwise determine future probable injury. Mortgagebanc & Trust, Inc. v. State, 718
S.W.2d 865, 869 (Tex. App.--Austin 1986, no writ); Rio Grande Oil Co. v. State, 539 S.W.2d
917, 921 (Tex. Civ. App.--Houston [1st Dist.] 1976, writ ref'd n.r.e.). Article 581-32 allows the
State to seek an injunction against a person who "has engaged in, is engaged in, or is about to be
engaged in" any practice or transaction declared fraudulent by the Act and authorizes the court
to issue an injunction against such a person. Art. 581-32(A). Because injunctive relief can be
ordered under the Act based on past actions alone, we overrule issue five.

 In his sixth issue, Shields argues that the court erroneously ordered restitution to
investors for the net amount of their investment rather than the amount of commissions Shields
received from them. The court ordered Shields to make restitution to twelve individual investors
in the total amount of $977,195.21. The order of restitution was based on the jury's answer to
a question asking how much money Shields obtained from each investor by fraudulent practices,
less the amount the investor received from the investment. Shields' commissions amounted to ten
percent of the sales he personally made and three percent of the sales made by other salespeople. 
Shields remitted the funds provided by the investors to HLS and owned no personal stake in HLS. 
Assuming a full ten percent commission on each sale, Shields would have earned about $103,450
from the investors in question.

 The Act authorizes the court to award restitution to a victim of fraudulent securities
practices: "The court may order the defendant to deliver to the person defrauded the amount of
money or the property that the defendant obtained from the person by the fraudulent practices." 
Art. 581-32(B) (West Supp. 2000). Shields argues that by requiring delivery of the amount of
money the defendant obtained, the Act means only the amount of money that he personally
obtained in the form of commissions. The remedial goals of the Act focus on investors, however,
rather than on sellers. To effect the Act's purpose of protecting the public from fraudulent
securities practices, we determine that Shields, despite being only an intermediary in the sales
process, can be held liable for the full amount of each defrauded individual's net investment loss. 
See, e.g., Brown v. Cole, 291 S.W.2d 704, 711 (Tex. 1956) (intermediary seller was liable to
buyers for full purchase price of security under article 581-33(A) as it existed before being
amended). We overrule issue six.

 In his seventh and eighth issues, Shields argues that he cannot be held liable in
restitution for the conduct of other employees of Southard. Shields asserts that the court
erroneously held him liable for the acts of other employees either by holding him vicariously
liable or by considering him an abettor of the other employees. While the Act authorizes
injunctive relief against any person who has materially aided another to commit a fraudulent
securities practice, restitution, which may be sought in the same action as an injunction, is
authorized for "a victim of fraudulent practices." Art. 581-32(A), (B). Assuming Shields'
argument has merit, however, the court's judgment can be supported on an independent,
unchallenged ground.

 The trial court submitted two questions to the jury, which the jury was required to
answer as to eighteen individual investors. In question six, the court asked, "Did Robert H.
Shields engage in fraudulent practices in the sale of securities to the individuals listed below?" 
In question seven, the court asked, "Did Robert H. Shields materially aid salespersons to engage
in fraudulent practices in the sale of securities to the individuals listed below, with intent to
deceive or defraud or with reckless disregard for the truth or the law?" Having answered both
questions affirmatively as to each investor, the jury was then asked to determine the net amount
of money Shields obtained from each investor by fraudulent practices. The restitution awarded
investors could rest on the jury's answer to either question six or question seven. Because Shields
does not challenge the jury's answer to question six, we presume that it supports the judgment of
restitution. Johnson v. Coggeshall, 578 S.W.2d 556, 560 (Tex. Civ. App.--Austin 1979, no writ).

 Shields also contends that the trial court erred in admitting hearsay statements
attributed to sales representatives of Southard other than Shields. Shields fails to show in the
record where any of these hearsay statements were admitted, and in any event, does not show that
the judgment turns on the particular statements admitted. City of Brownsville v. Alvarado, 897
S.W.2d 750, 753-54 (Tex. 1994). Having failed to show error or harm, Shields is not entitled
to relief on this argument. See Tex. R. App. P. 33.1, 44.1(a). We therefore overrule issues
seven and eight.

 In issue nine, Shields argues that the State's claims for restitution are barred by
limitations. Shields reasons that because investors pursuing the private cause of action for
restitution authorized by article 581-33 must sue within the time prescribed by that article, the
same time restriction applies to the State's suit for restitution under article 581-32. See art. 581-33(H) (West Supp. 2000). Because article 581-33 both creates a private right of action and
incorporates a time limit within which the investor must initiate the action, the limitation qualifies
the right and becomes an element of the statutory cause of action itself. See California v. Copus,
309 S.W.2d 227, 231 (Tex. 1958). This qualification on filing suit is not considered to be a
statute of limitations. See id. The express time limit in article 581-33 being an essential element
of the private cause of action for restitution, we cannot agree that the legislature intended to
require, but omitted to state, the same element in the State's cause of action for restitution in
article 581-32. (3)

 Even if Shields were correct that the time limit he advocates constitutes a statute
of limitations, it is well settled that the State in its sovereign capacity is not subject to the defense
of limitations. State v. Durham, 860 S.W.2d 63, 67 (Tex. 1993); see Tex. Civ. Prac. & Rem.
Code Ann. § 16.061 (West Supp. 2000). The rationale for this immunity is to allow a
governmental entity to enforce its laws to protect the general public. Waller v. Sanchez, 618
S.W.2d 407, 409 (Tex. Civ. App.--Corpus Christi 1981, no writ). Article 581-32(B), authorizing
the State to sue for restitution on behalf of individual investors, is an exercise of the legislature's
police power to constrain the conduct of securities dealers for the public's protection. See Atwood
v. State, 121 S.W.2d 353, 355 (Tex. Crim. App. 1938). The fact that the money the State
recovers benefits individual investors does not in any way alter the character of the suit as one to
enforce the state's securities laws. We therefore hold that the State acted in its sovereign capacity
in suing for restitution and was not subject to the time limit that Shields proposes. We overrule
point nine.

 In issues ten and eleven, Shields contends that the trial court should have admitted
evidence of a private lawsuit against him for violations of the Act and that his exoneration in that
suit should have precluded restitution in favor of three investors involved in both suits. By bill
of exception, Shields showed that in 1991 numerous individual investors sued Shields, Southard
Securities Corporation, H. L. Southard, and others claiming violations of federal, Texas, and
other state securities acts; three plaintiffs in that lawsuit, Peter Loveall, George Loveall, Jr., and
Arthur Sisson, are also named investors in this suit. (4) The Harris County district court compelled
the parties in the private lawsuit to arbitrate their claims. In their award made in 1993, the
arbitrators denied all claims against Shields.

 Arbitration in Texas can be either nonbinding or binding and enforceable as a
contract. Unless the parties stipulate otherwise in advance, any award is not binding and serves
only as a basis for the parties' further settlement negotiations. Tex. Civ. Prac. & Rem. Code
Ann. § 154.027 (West 1997). Peter Loveall testified for the bill of exception that proceedings in
the private lawsuit were still ongoing and that negotiations had been occurring. Assuming that
the State could be bound by the result of a suit to which it was not a party, the record does not
show that the parties have achieved any final result in the private lawsuit. The arbitrators' award
could well have served only to launch further settlement negotiations. See id. Because the private
lawsuit and arbitration never resulted in a final adjudication, the trial court did not err in refusing
to admit evidence about it or to deny restitution to the Lovealls.

 In his twelfth issue, Shields asserts that the court erred in awarding restitution to
two individual investors, each of whom invested only on behalf of a separate legal entity. At the
charge conference, however, Shields refused to agree to submit these investors to the jury in a
representative capacity, insisting that they not be submitted at all. Because Shields refused the
State's offer to submit questions in the form he now urges, he has waived any error in the
submission. See Tex. R. App. P. 33(a). We overrule issue twelve.

 Having considered and overruled each of Shields' issues, we affirm the order of
the trial court.



 


 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: August 31, 2000

Publish
1. The court's injunctive relief follows:

 

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that Defendant
Shields, his employees, agents, representatives, or any other entity acting for or on
his behalf, are permanently enjoined and commanded to desist and refrain from the
following acts:


A. Committing any fraud or fraudulent acts or practices or false, misleading or 
deceptive acts or practices in connection with the issuance, sale, offer to sell, 
promotion, negotiations for sale, advertisement, dealing, distribution, or 
attempt to dispose for value of any security. Fraud or misleading or deceptive 
acts or practices shall include, but not be limited to:


(1) Employing any device, scheme or artifice to defraud;


(2) Any misrepresentation of a relevant fact;


(3) Any promise or representation or prediction as to the future not made 
honestly and in good faith;


(4) Any intentional failure to disclose a material fact;


(5) Gaining, directly or indirectly, through the sale of any security of an 
underwriting or promotion fee or profit, selling or managing 
commission or profit, so gross or exorbitant as to be unconscionable;


(6) Any false pretense, representation or promise;


(7) Making or attempting to make fictitious or pretended purchases or 
sales of securities;


(8) Any practice or transaction or course of business relating to the 
purchase or sale of securities which is fraudulent or which has 
operated or would operate as a fraud upon the purchaser;


(9) Materially aiding any person who in any way is participating in 
fraudulent practices.
2. Article 581-32(A) provides that a court can enjoin a person who has engaged in any of the
practices declared fraudulent by the Act "from continuing such fraudulent practices or engaging
therein or doing any act or acts in furtherance thereof or in violation of this Act." Art. 581-32(A)
(West Supp. 2000).
3. Article 581-32(B) states in its entirety:


The Attorney General may, in an action under Subsection A of this section
[authorizing the State to obtain an injunction] or in a separate action in District
Court, seek restitution for a victim of fraudulent practices. The court may order the
defendant to deliver to the person defrauded the amount of money or the property
that the defendant obtained from the person by the fraudulent practices.


Act art. 581-32(B) (West Supp. 2000).
4. Because the jury found that Shields obtained no money from Arthur Sisson by fraudulent
practices, we will consider in this issue only the Lovealls' claims.



 and serves
only as a basis for the parties' further settlement negotiations. Tex. Civ. Prac. & Rem. Code
Ann. § 154.027 (West 1997). Peter Loveall testified for the bill of exception that proceedings in
the private lawsuit were still ongoing and that negotiations had been occurring. Assuming that
the State could be bound by the result of a suit to which it was not a party, the record does not
show that the parties have achieved any final result in the private lawsuit. The arbitrators' award
could well have served only to launch further settlement negotiations. See id. Because the private
lawsuit and arbitration never resulted in a final adjudication, the trial court did not err in refusing
to admit evidence about it or to deny restitution to the Lovealls.

 In his twelfth issue, Shields asserts that the court erred in awarding restitution to
two individual investors, each of whom invested only on behalf of a separate legal entity. At the
charge conference, however, Shields refused to agree to submit these investors to the jury in a
representative capacity, insisting that they not be submitted at all. Because Shields refused the
State's offer to submit questions in the form he now urges, he has waived any error in the
submission. See Tex. R. App. P. 33(a). We overrule issue twelve.

 Having considered and overruled each of Shields' issues, we affirm the order of
the trial court.



 


 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: August 31, 2000

Publish
1. The court's injunctive relief follows:

 

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that Defendant
Shields, his employees, agents, representatives, or any other entity acting for or on
his behalf, are permanently enjoined and commanded to desist and refrain from the
following acts:


A