

# IN THE
# TENTH COURT OF APPEALS

### No. 10-21-00323-CV

**DOROTHY GANTENBEIN &
CHARLES FRICKE,**

                                        **Appellants**

 **v.**

**TONYA LACY, BOB BURNETT, ROXANNE BURNETT, WILL FAIR,
CAROLYN FAIR, KURT HARWELL, & JENNIFER HARWELL,**

                                        **Appellees**

---

**From the 170th District Court
McLennan County, Texas
Trial Court No. 2021-1130-4**

---

## MEMORANDUM OPINION

---

In six issues, Appellants Dorothy Gantenbein and Charles Fricke ("the Homeowners") appeal the trial court's judgment granting declaratory and injunctive relief in favor of Appellees Tonya Lacy, Bob Burnett, Roxanne Burnett, Will Fair, Carolyn Fair, Kurt Harwell, and Jennifer Harwell ("the Neighbors"). We will affirm.

## Factual Background

In 2021, the Neighbors sued the Homeowners seeking a declaration that the Homeowners' alleged plan to rent rooms in their newly purchased residence would violate restrictive covenants applicable to the Stone Creek Ranch subdivision and sought to permanently enjoin the Homeowners' plans. The Homeowners filed a counterclaim seeking declaratory judgment that the language of the restrictive covenants allows them to rent rooms if they wish to do so. After a bench trial, the trial court granted the relief requested by the Neighbors, including an award of attorneys' fees. The Homeowners requested findings of fact and conclusions of law, which the court issued, and then timely perfected this appeal.

## Issue One

In their first issue, the Homeowners contend that this dispute was not ripe for adjudication by the trial court.

AUTHORITY

Ripeness is a threshold inquiry regarding the justiciability of a dispute and turns on whether the aggrieved party has identified a concrete injury. *Robinson v. Parker*, 353 S.W.3d 753, 756 (Tex. 2011). The Supreme Court of Texas has defined concrete injury as "an injury [that] has occurred or is likely to occur, rather than being contingent or remote." *Gibson*, 22 S.W. at 851–52. In other words, a suit is not ripe when the concrete injury is solely dependent "on contingent or hypothetical facts, or upon events that have not yet come to pass." *Robinson*, 353 S.W.3d at 756; *see also Gibson*, 22 S.W.3d at 852.

The Uniform Declaratory Judgments Act provides, "A person interested under a deed . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a). A suit for declaratory judgment is proper where "it will serve a useful purpose or will terminate the controversy between the parties." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 468 (Tex. 1995). Actions under the Uniform Declaratory Judgments Act can be "a means of determining the parties' rights when a controversy has arisen but before a wrong has been committed, and is preventative in nature." *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 624 (Tex. 2011) (citation and internal quotation marks omitted). Thus, even if a litigant's claims arise from possible uses of property, these claims are ripe once they "are inextricably tethered to a present disagreement between the parties" over the scope of any restrictions and alleged infringement thereof. *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 684 (Tex. 2020).

DISCUSSION

The record reflects that the Homeowners purchased their residence in the Stone Creek Ranch subdivision purportedly for the purpose of Gantenbein and Fricke residing there with Gantenbein's elderly mother. The residence is nearly 7,000 square feet in size and has seven bedrooms. One area is separate from the rest of the reisdence and contains a suite of four bedrooms, each with its own bath, as well as a shared living area.

Testimony at trial reflects that shortly after the residence was purchased, Fricke told a neighbor that he planned to rent four bedrooms to SpaceX executives and that the

rental income would be about $9,000 per month. Further testimony reflects that Fricke told the neighbor that because of his contacts at SpaceX, he could advertise the rooms on a bulletin board there. A real estate agent who lives in the subdivision and represented the sellers of the residence testified that she learned of the Homeowners' plan and wanted to stop the sale but was advised not to do so by her superiors.

The Neighbors' attorney dispatched a certified letter and a copy of the restrictive covenants to the Homeowners seeking assurances from the Homeowners that they had no intention of renting rooms in the residence. Fricke testified that he received the letter from the Neighbors' attorney but, after consulting an attorney himself, did not respond. The Neighbors' attorney dispatched a second certified letter, again raising concerns regarding any plans to rent rooms in the residence and informing the Homeowners that the Neighbors would "protect their interests utilizing all lawful remedies available." Fricke conceded that he chose to ignore the second letter, too.

While testifying, Fricke denied any specific intent or plan to rent his rooms, adding that he would await the outcome of the lawsuit, but Fricke also testified that he owns or co-owns four other properties in the Waco area and that he rents to as many as thirteen individuals. Fricke acknowledged that the rentals together amount to an enterprise worth between ten and thirteen thousand dollars per month and that the four properties are essentially boarding houses.

Based on the record before us, this is not an instance in which the alleged grievance is "contingent" or "hypothetical"—to the contrary, by the time the Neighbors filed suit, the Homeowners had indicated their intent to move forward with the possible violation

of the restrictive covenants and ultimately confirmed that they had engaged in similar conduct in other neighborhoods in the past. They had ignored multiple inquiries and objections from the Neighbors. Thus, because a genuine controversy existed between the Neighbors and the Homeowners and because declaratory-judgment proceedings may be used preventatively to determine the rights of litigants when a controversy has arisen but before a wrong has been committed, this case was ripe when filed in the trial court. *See Etan Indus.*, 359 S.W.3d at 624. We overrule the first issue.

### Issues Two and Six

The Homeowners' complaints in these two issues relate to the trial court's interpretation of the restrictive covenants and the grant of declaratory relief. The pertinent portions of the restrictive covenants state:

1. All lots shall be used for residential purposes only. No building shall be erected, altered, placed, or permitted to remain on any lot other than one detached single-family dwelling and a private garage, and no existing structure of any kind will be permitted to be moved on any lot.

2. Living quarters on a residential lot for other than the family occupying the principal residence shall be used only for bona fide servants or assistants, and such living quarters shall be within the main residence or attached to rear of same.

AUTHORITY

In reviewing declaratory judgments, "We look to the procedure used to resolve the issue before the trial court to determine the standard of review on appeal." *City of Galveston v. Tex. Gen. Land Office*, 196 S.W.3d 218, 221 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 37.010. With respect to

judgment rendered after a bench trial, we review the trial court's factual findings for sufficiency of the evidence and review its conclusions of law, including any conclusions regarding the interpretation of a restrictive covenant, de novo. *See Lynch*, 595 S.W.3d at 683; *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 279 (Tex. 2018). "Unchallenged findings of fact are binding on a reviewing court unless the contrary is established as a matter of law or there is no evidence to support the findings." *City of Forth Worth v. Johnson*, 105 S.W.3d 154, 172 (Tex. App.—Waco 2003, no pet.). "We will uphold the trial court's determination in a declaratory[-]judgment action if it is sustainable upon any legal theory supported by the evidence." *Tanglewood Homes Ass'n, Inc. v. Feldman*, 436 S.W.3d 48, 66 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

The interpretation of restrictive covenants is subject to the general rules of contract construction. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). Thus, when construing a restrictive covenant, our primary task is to determine the objective intent of the framers of the restrictive covenant. *Tarr*, 556 S.W.3d at 280; *Wilmoth v. Wilcox*, 734 S.W.2d 656, 658 (Tex. 1987). As with contracts, if the disputed language can be given a definite or certain meaning, it is unambiguous as a matter of law. *Pilarcik*, 966 S.W.2d at 478. On the other hand, if that language is susceptible to more than one reasonable interpretation, it is ambiguous. *Id.* "Courts must examine the covenants as a whole in light of the circumstances present when the parties entered the agreement, giving the words used in the restrictive covenant . . . the meaning which they commonly held as of the date the covenant was written, and not as of some subsequent date." *Tarr*, 556 S.W.3d at 280 (internal quotes and citations omitted); *see also Wilmoth*, 734 S.W.2d at 657–58.

Furthermore, words used in a restrictive covenant may not be enlarged, extended, stretched, or changed by judicial interpretation. *Wilmoth*, 734 S.W.2d at 657. Additionally, "courts should avoid any construction that nullifies a restrictive covenant provision." *Tarr*, 556 S.W.3d at 280 (citations and internal quotation marks omitted). "If a restrictive covenant can be given definite legal meaning," it "should be construed liberally to effectuate its intent." *Garrett v. Sympson*, 523 S.W.3d 862, 866 (Tex. App.—Fort Worth 2017, pet. denied), *see also* TEX. PROP. CODE ANN. § 202.003(a).

DISCUSSION

We begin our analysis by determining the objective intent of the framers of the restrictive covenants as reflected by the language chosen. *Tarr*, 556 S.W.3d at 280. Neither the Homeowners nor the Neighbors contend that paragraph one of the restrictive covenants is ambiguous, and we agree. The first sentence of paragraph one states, "All lots shall be used for residential purposes only." Nowhere in the restrictions is "residential purposes" defined. However, the Supreme Court of Texas has held that restrictions limiting property use to "residential purposes" merely require that the property be used for "living purposes" as distinguished from business or commercial purposes. *See Stephenson v. Perlitz*, 532 S.W.2d 954, 955 (Tex. 1976) (citations omitted), s*ee also Tarr*, 556 S.W.3d at 290. The second sentence of paragraph one stipulates, "No building shall be erected, altered, placed or permitted to remain on any lot other than one detached single-family dwelling and a private garage, and no existing structure of any kind will be permitted to be moved on any lot." As the parties recognize, paragraph one

unambiguously limits the development of any lot to one detached, single-family dwelling.

Appellants contend that paragraph two is ambiguous "and is therefore unenforceable." Paragraph two provides in part that "[l]iving quarters on a residential lot for other than the family occupying the principal residence shall be used only for bona fide servants or assistants . . . ." This language governs the use of living quarters "for other than the family occupying the principal residence" and does not appear to restrict use of the living quarters for the family occupying the principal residence. The next phrase of the paragraph requires that living quarters for those other than the family occupying the principal residence "shall be within the main residence or attached to rear of same."

The Homeowners argue that the language "bona fide servants or assistants" is ambiguous in that it is subject to more than one interpretation. These terms are not defined in the restrictions. Turning to the common understanding of these terms at the time the restrictive covenants were framed, we find that the definitions for "bona fide" included "made in good faith without fraud or deceit," "made with earnest intent," and "neither specious nor counterfeit: [genuine]." MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY 130 (10th ed. 1993). "Servant" was defined as "one that serves others" and "one that performs duties about the person or home of a master or personal employer," while "assistant" was defined as "a person who assists: [helper]." *Id.* at 70, 1070. And although these definitions may be broad and somewhat vague, that fact alone does not render the phrase ambiguous. As the Supreme Court of Texas explained, a term "is not

rendered ambiguous solely because the application of 'its unquestionable meaning' to a certain factual situation is 'uncertain' or 'vague.'"  *Tarr*, 556 S.W.3d at 290 (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 31–32 (2012)).  "A word or phrase is ambiguous when the question is which of two or more meanings applies; it is vague when its unquestionable meaning has uncertain application to various factual situations."  *Id.* (citing SCALIA at 31–32).

Employing these principles here, first with respect to the provision addressing "bona fide servants or assistants," the definitions generally contemplate that "bona fide" means something that is genuine, actual, and legitimate; that "servant" means a household employee; and that "assistant" means one who assists.  Applying these definitions, we conclude that the provision is not ambiguous and applies to genuine, actual, and legitimate household employees and others who assist with duties within or about the residence.  Accordingly, in light of the common understanding of the disputed phrases found by utilizing definitions from dictionaries in use at the time, the framers' intent can be discerned from the plain language of paragraph two as prohibiting non-members of the family that occupies the primary residence from residing in that residence.

The Homeowners argue that even if the second paragraph is not ambiguous and thus enforceable against them, "family" should be construed so as not to prohibit the "incidental lodging or boarding of occupants."  This argument is based on language from *Southampton Civic Club v. Couch*, 322 S.W.2d 516 (Tex. 1958), which used the definition of "family" from a 1935 dictionary—"a household, including parents, children, and

servants, and, as the case may be, lodgers or boarders" — to interpret the phrase "single-family residence." Yet setting aside any historical meaning described in the common law, the definitions of "family" commonly used when the covenant at issue here was written included "a group of individuals living under one roof and [usually] under one head," "a group of persons of common ancestry," "a people or group of peoples regarded as deriving from common stock," and "the basic unit in society traditionally consisting of two parents rearing their own or adopted children." MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY 419–420 (10th ed. 1993). We conclude the common understanding of "family" at the time the restrictions were drafted did not include lodgers or boarders. Because these individuals are not included in that word as it was intended to be understood, and because the restrictive covenants limit the use of living quarters to only the family occupying the principal residence or its bona fide servants or assistants, the Homeowners' proposed "incidental lodging or boarding" is not permitted. We overrule issues two and six.

### Issue Three

The Homeowners contend that the trial court erred in granting injunctive relief in favor of the Neighbors because the law presumes that the Homeowners will recognize, respect, and comply with the declaratory judgment. *See, e.g.*, *Wilchester W. Concerned Homeowners LDEF, Inc. v. Wilchester W. Fund, Inc.*, 177 S.W.3d 552, 558 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 433 (Tex. App.—Austin 2004, pet. denied). They therefore reason that an injunction is available only upon a showing that the Homeowners will not do so.

The Declaratory Judgment Act provides, "Further relief," including injunctive relief, "based on a declaratory judgment or decree may be granted whenever necessary or proper." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.011. Under section 37.011, "A permanent injunction may be obtained when the evidence establishes that a defendant will not comply with a declaratory judgment." *Shelton v. Kalbow*, 489 S.W.3d 32, 48 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *see State v. Anderson Courier Serv.*, 222 S.W.3d 62, 66 (Tex. App.—Austin 2005, pet. denied) *see also Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994). A petitioner seeking permanent injunctive relief to enforce restrictive covenants is required only to show that the opposing party intends to commit an act that would breach the restrictive covenants. *See Wiese*, 384 S.W.3d at 399; *see also Letkeman v. Reyes*, 299 S.W.3d 482, 486 (Tex. App.—Amarillo 2009, no pet.). We review the grant or denial of a permanent injunction for abuse of discretion. *See Tanglewood Homes*, 436 S.W.3d at 76.

DISCUSSION

In a bench trial, "the trial court, as fact finder, is the sole judge of the credibility of the witnesses." *Bell Helicopter Textron, Inc. v. Burnett*, 552 S.W.3d 901, 913 (Tex. App.—Fort Worth 2018, pet. denied). "The trial court may take into account all the surrounding facts and circumstances in connection with the testimony of each witness and accept or reject all or any part of that testimony.'" *Id.* When there is probative evidence to support the trial court's findings, they are binding on the reviewing court even if there is

conflicting evidence suggesting different conclusions. *Vannerson v. Vannerson*, 857 S.W.2d 659, 665 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

In this case, the trial court issued the following relevant findings, which the Homeowners have not expressly challenged on appeal:

- Defendants intend to violate the Restrictions.[1]

- The actions and intentions of Defendants create a risk of imminent harm which will result in irreparable injury for which Plaintiffs have no adequate remedy at law.

- If injunction [is] not granted, Defendants will, and intend to, use the Subject Property in a manner that violates the Restrictions.

- Defendants['] intended actions include renting the Subject Property for purposes other than use by a family and bona fide servants and assistants.

- Defendants['] intended actions include allowing use of the living quarters on the Subject Property by other than family and bona fide servants and assistants.

- Defendants['] intended action constitute primarily use for a commercial purpose and financial gain which is not incidental to Defendants['] ownership of the subject Property.

Returning to the evidence set forth in our discussion of issue one, we conclude that the trial court acted within its discretion in issuing the permanent injunction. Nearly all the evidence admitted at trial supports the trial court's findings that the Homeowners intended to use their residence in a manner that we have now held would violate the

---

[1] The trial court used "Defendants" to refer to the Homeowners and "Subject Property" to refer to what we have referred to as their residence.

restrictive covenants.  And while Ficke at one point testified that he would await the outcome of the litigation before moving forward with the challenged plans, the court, as the sole arbiter of the demeanor and credibility of witnesses, *see Antolik v. Antolik*, No. 06-18-00096-CV, 2019 WL 2119646, at *3 (Tex. App.—Texarkana May 15, 2019, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005)), was free to discount that testimony.  We overrule issue three.

**Issue Four**

The Homeowners next argue that the trial court erred in granting injunctive relief beyond that requested by the Neighbors.

AUTHORITY

"In general, a permanent injunction must not grant relief which is not prayed for[,] nor be more comprehensive or restrictive than justified by the pleadings, the evidence, and the usages of equity." *Holubec v. Brandenberger*, 111 S.W.3d 32, 39 (Tex. 2003) (citation and internal quotation marks omitted).  Litigants seeking a permanent injunction must be specific in pleading the relief sought, and courts are without authority to grant relief beyond that so specified in the pleadings.  *Shields v. State*, 27 S.W.3d 267, 271 (Tex. App.—Austin 2000, no pet.).  Nevertheless, "a trial court has some latitude in fashioning the details of appropriate relief," and some deference must be afforded to the trial court because of its "familiarity with the facts and the background of the dispute between the parties . . . ." *Operation Rescue-Nat'l v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 975 S.W.2d 546, 560 (Tex. 1998).  Moreover, an injunction should be broad enough to prevent a repetition of the harm sought to be corrected or prevented.  *Hitt v. Mabry*, 687 S.W.2d

791, 795 (Tex. App.—San Antonio 1985, no writ) (citing *San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 291 S.W.2d 697, 702 (1956)). However, "[a] trial court's discretion in fashioning the details of an injunctive provision does not extend to determining whether particular kinds of relief are justified." *Operation Rescue*, 975 S.W.2d at 560.

DISCUSSION

The Homeowners raise two arguments contending that the relief afforded exceeds that sought. First, they complain that the injunction applies to "successors and assignees" when that was language not requested by the Neighbors. But the Neighbors' live petition requested an order that would enjoin and restrain the Homeowners "and as applicable, their agents, servants, employees, attorneys and any and all persons in active concert or participation with any of them . . . ." Rule 683, which governs the "form and scope of [an] injunction or restraining order," provides that an injunction is "binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." TEX. R. CIV. P. 683, *see also San Antonio Bar*, 291 S.W.2d at 701. The injunction's language restrains and enjoins the Homeowners "and as applicable their respective, agents, servants, and all of those acting in active concert or participation with any of such persons or entities, and the successors and assignees of any of them." Although the Neighbors may not have expressly requested that the trial court enjoin each of these groups of persons or entities, any of those groups or entities might have been properly implied by law pursuant to the Rule. *See San Antonio Bar*, 291

S.W.2d at 701. Thus, the trial court did not abuse its discretion when it included "successor and assignees" in the permanent injunction.

Second, the Homeowners complain that the Neighbors requested six points of injunctive relief and that the "five granted by the court are completely different." The Neighbors asked the court to enjoin the Homeowners from the following:

a) Using the Shady Trail Home for any purpose other than a single-family residence.

b) Renting one or more rooms in the Shady Trail Home other than as a single-family residence to any non-family persons, other than bona fide servants or assistants of the family occupying the residence.

c) Violating the restrictions imposed on the Shady Trial Home as to any use other than as single-family residence.

d) Except for the limited purpose of a long-term lease to a family unit and their bona fide assistants and servants, advertising the Shady Trail Home for lease in any manner, including but not limited to postings on the internet and/or social media, physical signage or postings in newspapers.

e) Renting the Shady Trail Home to a commercial enterprise or entity with the intent to use the Shady Trial Home as a short-term rental or boarding house.

f) Participating in a timeshare or rent pool.

The final judgment ultimately granted injunctive relief from:

1. Using the Subject Property in any manner other than for residential purposes as allowed under the Restrictions, as determined herein[.]

2. Allowing occupancy of the Subject Property other than as a single-family residence to persons other than one set of family

members and the bona fide servants or assistants of that family occupying the residence.

3.  Advertising the Subject Property for occupancy in any manner, including but not limited to postings on the internet and/or social media, physical signage, or postings in newspapers, for purposes other than as a single-family residence to persons other than one set of family members and the bona fide servants or assistants of that family occupying the residence.

4.  Renting the Subject Property as a commercial or financial enterprise or entity with the intent to use the Subject Property as a short-term rental or boarding house.

5.  Using the Subject Property as a timeshare or in a rental pool.

The Homeowners delineate the following arguments regarding this relief: (1) that the court's use of the term "residential purposes" in paragraph 1 when the petition used the phrase "single-family residence" is a variance that grants relief beyond that sought; (2) that the court's use of the terms "allowing occupancy" and "one set of family members" in paragraph 2 when the petition used the terms "renting" and "any non-family members" is a variance that grants relief beyond that sought; (3) that the court did not grant relief requested by the Neighbors in paragraph "c"; (4) that the court's use of the terms "for purposes other than as a single-family residence to persons other than one set of family members" in paragraph 3 when the petition used the phrase "limited purposes of a long-term lease" in paragraph "d" is a variance that grants relief beyond that sought; (5) that the court's use of the phrase "renting . . . to" in paragraph 4 when the petition used the phrase "renting . . . as" in paragraph "e" is a variance that grants relief beyond that sought; and (6) that the court's use of the phrase "using . . . as" in paragraph

5 when the petition used the phrase "participating in" in paragraph "f" is a variance that grants relief beyond that sought.

As already set forth, a trial court has latitude in crafting an injunction sufficient to alleviate the harm alleged. *Operation Rescue*, 975 S.W.2d at 560. We conclude that Homeowners' arguments amount to little more than semantic complaints: those arguments do not identify excessive relief that amounts to an abuse of discretion, *see Shields*, 27 S.W.3d at 271, nor do they identify a "particular kind[ ] of relief" beyond the purview of what the trial court could grant, *see Operation Rescue*, 975 S.W.2d at 560. We overrule issue four.

### Issue Five

In their final issue on appeal, Homeowners conditionally challenge the trial court's award of attorneys' fees, court costs, and interest. They correctly acknowledge that the Declaratory Judgments Act authorizes such an award to the prevailing party, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009, and clarify that the only "issue presented for the Court's consideration is who is the prevailing party that is entitled to attorney fees and costs." Having overruled each of the Homeowners' preceding issues on appeal, we need not reach this conditional challenge. We therefore affirm the trial court's judgment.


MATT JOHNSON
Justice

Before Chief Justice Gray,
      Justice Johnson, and
      Justice Smith
Affirmed
Opinion delivered and filed July 26, 2023
[CV06}

